William E. VENISON, Appellant,

v.

Elbert C. ROBINSON, Verna C. Robinson, and Cheryl D. Edwards, Appellees.

No. 98–CV–518.

District of Columbia Court of Appeals.

Submitted May 18, 1999.

Decided July 27, 2000.

---

John F. Pressley, Jr., Washington, DC, was on the brief for appellant.

Jay B. Dorsey, Washington, DC, was on the brief for appellees Elbert and Verna Robinson.

Carol S. Blumenthal, Washington, DC, was on the brief for appellee Cheryl Edwards.

Before TERRY and SCHWELB, Associate Judges, and KERN, Senior Judge.

TERRY, Associate Judge:

Appellant William Venison seeks reversal of a default judgment in favor of appellees Elbert and Verna Robinson, quieting title to a piece of real property that Venison had previously owned. The Robinsons filed the underlying complaint in 1997 to confirm a tax deed which they had acquired from the District of Columbia in 1993. Despite substantial evidence that he was personally served, Mr. Venison claims that the default judgment was the only legal document he ever received concerning the case, and that the court did not have jurisdiction over him because he had never been properly served. He also asserts that his present wife obtained a dower interest in the property before title was transferred to the Robinsons, and that the Robinsons' failure to join her as an indispensable party warrants reversal. We decline to consider the latter argument because the judgment, as it now exists, has no effect on any possible dower interest which Mrs. Venison may (or may not) assert in the future. As to Mr. Venison, we conclude that he has not overcome the presumption that service was proper, and thus we affirm the judgment.

I

In 1950 William Venison and his first wife, Mary Venison, purchased a piece of real property located at 513 Tennessee Avenue, Northeast. Mary Venison transferred her interest in the property to her husband in 1963, making him its sole owner. Sometime prior to 1987, Mr. Venison stopped paying taxes on the property.[1]

---

1. According to an affidavit which he submitted in support of his motion to vacate the default judgment, Mr. Venison has not lived in the Tennessee Avenue house "since the 1960s."

The District of Columbia taxing authorities sent him notices by certified mail advising him of the taxes due, but Mr. Venison never responded. Notices were also published in the Washington Times and the Washington Post on December 18 and 19, 1987, respectively. Consequently, in January 1988, the District sold the property to the Robinsons at a public tax sale, and shortly thereafter the Robinsons obtained a tax certificate for the property.

For two years following the tax sale, Mr. Venison had a right to redeem the property by paying all of the back taxes owing on it, plus interest. *See* D.C.Code § 47–1306(a) (1990).[2] On December 15, 1989, the District sent Mr. Venison a letter, by certified mail, notifying him of the imminent expiration of his redemption period and the prospective loss of his property if he did not redeem it by January 29, 1990.[3] According to Mr. Venison, he never received notice of either a tax delinquency or the impending expiration of his right of redemption.

On July 30, 1993, the Robinsons received a tax deed to the property. They held it from that date until January 21, 1998, when they transferred the property to Cheryl Edwards. Before conveying the property to Ms. Edwards, the Robinsons filed a "complaint to remove cloud on title." On October 27, 1997, a special process server filed an affidavit of service stating that he had personally served Mr. Venison with the summons and complaint on October 25, 1997, at the address where Venison admitted he lived.[4] According to the affidavit, the person upon whom the complaint was served identified himself as William Venison. The complaint was never answered.

On December 11, 1997, the Robinsons filed and served an application for judgment, based on Mr. Venison's failure to file an answer to the complaint. The court granted the application and issued a default judgment on January 8, 1998, granting to the Robinsons "absolute ownership and the right of disposition of the property" at 513 Tennessee Avenue, N.E. The Robinsons thereafter conveyed the property to Ms. Edwards.[5]

On January 26, 1998, Mr. Venison filed a motion to vacate the default judgment, asserting (1) that the court did not have personal jurisdiction over him because he had not been properly served,[6] (2) that he did not have proper notice of the legal proceedings against him, (3) that the Robinsons failed to join a necessary party, (4) that he had an adequate defense, and (5) that he acted promptly and in good faith upon becoming aware of the legal proceedings. To the motion Mr. Venison attached his own affidavit, along with copies of bills and cashier's checks showing that he had paid taxes on the property in 1995, 1996, and 1997. Mr. Venison's affidavit stated that "[t]he complaint ... was never served

**2.** The statute has since been amended to shorten the redemption period from two years to six months. *See* D.C.Code § 47–1306 (1997).

**3.** The receipt for the certified letter was signed by John Mathis. Mr. Venison asserts that Mr. Mathis was his neighbor, but that Mathis did not live at the address shown on the letter and was not authorized to accept or receive mail on Venison's behalf.

**4.** The special process server later executed a second affidavit, which appellees attached to their opposition to Venison's motion to vacate the default judgment. In both affidavits, the process server described Mr. Venison in significant detail. In the second affidavit, the process server also said that Mr. Venison told

him, "I don't want anything to do with that property, and I do not want these papers." The process server responded, "I am just going to leave them with you; I am just doing my job," and handed the papers to Mr. Venison.

**5.** The trial court in February 1998 granted Ms. Edwards leave to intervene "as a party plaintiff for all purposes."

**6.** In his motion to vacate the judgment, Mr. Venison stated that he was "never properly served" with the complaint, but he did not identify any "impropriety" in the service. Read in context, this statement appears to be simply an assertion that he was never served at all, and we shall regard it as such.

upon [him]" and that "[t]he only legal document which [he] received in this case was the final Order and Judgment." He also asserted that he had paid taxes on the property since he originally acquired it.

The court denied Mr. Venison's motion, ruling that his affidavit was insufficient to overcome the presumption, established by the process server's affidavit, that he had been personally served. Mr. Venison filed a motion for reconsideration and then filed a notice of appeal. Thereafter the trial court granted Mr. Venison's motion for reconsideration for the limited purpose of holding an evidentiary hearing on the issue of personal service; however, Mr. Venison withdrew his motion for reconsideration, and the hearing was never held.

## II

 The power of a trial court to vacate a prior judgment or order, other than merely for clerical mistakes, is circumscribed by Super. Ct. Civ. R. 60(b). Normally, we review the grant or denial of a motion under Rule 60(b) for abuse of discretion. *See Johnson v. Lustine Realty Co.,* 640 A.2d 708, 709 (D.C.1994); *Alexander v. Polinger Co.,* 496 A.2d 267, 269 (D.C.1985); *Union Storage Co. v. Knight,* 400 A.2d 316, 318 (D.C.1979); *Westmoreland v. Weaver Brothers, Inc.,* 295 A.2d 506, 508 (D.C.1972). However, because there is a strong judicial presumption favoring adjudication on the merits, we scrutinize closely the trial court's refusal to set aside a default judgment. *Johnson,* 640 A.2d at 709; *Clark v. Moler,* 418 A.2d 1039, 1041 (D.C.1980); *Dunn v. Profitt,* 408 A.2d 991, 992 (D.C.1979). Therefore, when reviewing the denial of a motion to vacate a default judgment, we consider the particular facts of the case to determine "whether the movant had actual notice of the proceeding, acted promptly after learning of the default judgment, proceeded in good faith, and presented a *prima facie* adequate defense, and also whether the non-moving party would be prejudiced." *Mewborn v. U.S. Life Credit Corp.,* 473

A.2d 389, 391 (D.C.1984); *accord, e.g., Gill v. Tolbert Construction, Inc.,* 676 A.2d 469, 470 (D.C.1996); *McMillan v. Choice Healthcare Plan, Inc.,* 618 A.2d 664, 667 (D.C.1992); *Clay v. Deering,* 618 A.2d 92, 94 (D.C.1992); *Walker v. Smith,* 499 A.2d 446, 449 (D.C.1985). Considering each of these factors in order, we conclude that the trial court did not abuse its discretion in this case.

### A. *Actual Notice*

 Mr. Venison asserts that he was never served with the complaint and never had notice of the proceedings against him. In direct conflict with that assertion are the two affidavits submitted by the process server, in which the server attested to serving Mr. Venison personally with the summons and complaint. In order to overcome "the presumption of truth attached to the statement in the process server's return," Mr. Venison was required to present "strong and convincing evidence" that he was not served. *Firemen's Insurance Co. v. Belts,* 455 A.2d 908, 909 (D.C.1983); *accord, e.g., Castro v. Universal Acceptance Corp.,* 200 A.2d 202, 203 (D.C.1964) ("there is a presumption of truth attaching to the Marshal's return of service which may only be impeached by strong and convincing evidence"). Mr. Venison's bare denial of receipt of the complaint or any other documents related to the case other than the final judgment, without more, was not sufficient to overcome that presumption. *Id.*

Despite the strong evidence that he was personally served, Mr. Venison argues that the trial court's failure to conduct a hearing to determine the validity of service was an abuse of discretion. He relies on *Hawkins v. Lynnhill Condominium Unit Owners Ass'n,* 513 A.2d 242 (D.C.1986), in which we held that the trial court had a duty to inquire further into an alleged discrepancy between the physical description of the defendant contained in the affidavit of service and her actual appearance before it could deny her motion to vacate

the default judgment. We explained that "[b]y denying service *and in addition controverting with specificity the descriptive information contained in the service affidavit,* Hawkins raised a significant factual dispute on the vital issue of whether she actually received notice of the lawsuit against her." *Id.* at 244 (emphasis added).

 This case is easily distinguished from *Hawkins.* Unlike Ms. Hawkins, who controverted in detail the description of her in the process server's affidavit, Mr. Venison merely denied receipt of the summons and complaint without otherwise contesting the substance of the affidavit. He did not deny that the process server came to his home or that he spoke to him. Nor did he claim that the physical description contained in the affidavit did not match his appearance. We therefore hold that Mr. Venison did not raise any genuine factual dispute regarding service of process that would warrant an evidentiary hearing.[7]

### B. *Prompt Action*

 Mr. Venison asserts that he acted quickly after learning about the default judgment. In its order the trial court agreed, ruling that Mr. Venison "[had] come forward promptly after the entry of the court's order and judgment...." It concluded, however, that Mr. Venison's promptness was the only factor favoring vacatur. Our assessment of the record is not quite as generous. We recognize that the focus of this factor is on the promptness with which the party against whom the default judgment was entered took action to challenge it after learning about it. However, this presupposes that the party was unaware of the proceedings against him up to that point. As we have already pointed out, Mr. Venison has pre-

sented no evidence—other than his unsupported claim that the judgment was the first document he received in the case—contesting the process server's affidavit that he was personally served. Since he failed to refute that affidavit, it must be presumed that Mr. Venison did receive personal service, and thus his promptness in coming forward after the judgment was entered carries little or no weight.

### C. *Good Faith*

 Mr. Venison asserts that he acted in good faith, and appellees do not contend that he acted in bad faith. Nevertheless, there is evidence in the process server's second affidavit (see note 4, *supra*) which suggests that Mr. Venison was not completely forthright. According to the process server, Mr. Venison stated that he did not want anything to do with the property, indicating that he knew what the complaint was about but did not want to deal with the matter. Because the trial court did not make any finding on the issue, we will not assume that Mr. Venison acted in bad faith. Here again, however, Mr. Venison's failure to overcome the presumption that he was personally served prevents us from concluding that he acted in good faith.

### D. *Prima Facie Defense*

 Despite his present argument to the contrary, Mr. Venison did not offer a *prima facie* adequate defense. His first defense is a simple assertion, completely unsupported by any evidence, that the District did not follow proper procedures when it sold his property for delinquent taxes. He cites several cases that articulate the many steps the District must take before it may make such a sale. *E.g., Gore v. Newsome,* 614 A.2d 40, 42 (D.C.

---

7. Although it was under no obligation to do so, the trial court agreed to hold an evidentiary hearing on the validity of the service of process when it granted Mr. Venison's motion to reconsider. Mr. Venison correctly states that his notice of appeal divested the trial court of its jurisdiction in all matters related to the case. *See In re S.C.M.,* 653 A.2d 398,

402 (D.C.1995); *Abrams v. Abrams,* 245 A.2d 843, 844 (D.C.1968). *But see Smith v. Pollin,* 90 U.S.App.D.C. 178, 180, 194 F.2d 349, 350 (1952). Nevertheless, we find it puzzling that Mr. Venison chose to withdraw his motion for reconsideration after it was granted, rather than to participate in the hearing to develop a record that might support his position.

1992); *Keatts v. Robinson,* 544 A.2d 716, 718 (D.C.1988). He does not, however, establish or even allege which, if any, of those steps the District failed to take in this case. The mere fact that the process is complicated does not establish that the District failed to follow all the prescribed procedures. It is still incumbent on Mr. Venison to demonstrate, with particularity, how the District fell short of legal requirements. Because he has failed to do so, this defense fails.

▓▓▓ As his second defense, Mr. Venison claims that because he paid taxes on the property, the sale was improper. Attached to his motion to vacate the default judgment were copies of tax notices and cashier's checks indicating that he had paid taxes on the property in 1995, 1996, and 1997. All of these payments, however, were made at least five years after his redemption period had expired and do not establish that the tax sale was invalid. Rather, they show at most that Mr. Venison paid taxes which he did not owe. Moreover, Mr. Venison's bald allegation that he has paid taxes on the property since he acquired it in 1950, without some evidence to support that allegation, does not establish a *prima facie* defense. *See Clark v. Moler,* 418 A.2d at 1043.

### E. *Prejudice to the Non–Moving Party*

▓▓▓ Relying on *Jones v. Hunt,* 298 A.2d 220, 222 (D.C.1972), Mr. Venison contends that the only proper question here is whether Ms. Edwards' claim of right to the property will be prejudiced by a trial on the merits. We disagree. In *Jones,* a case arising out of an automobile accident, our focus was properly on whether the plaintiff's claim would be prejudiced by a trial if the default judgment were set aside. In this case, however, we must also consider the prejudice to Ms. Edwards if

the judgment were vacated. Ms. Edwards, and presumably her mortgage company, relied on the judgment quieting title to the property in the Robinsons when she bought the property from the Robinsons in January 1998. If the default judgment were set aside and Mr. Venison were permitted to proceed, Ms. Edwards would be subject to litigation and an uncertain title. Ms. Edwards took additional steps to ensure that she obtained good title by making the Robinsons clear their title before she bought the property. Her reliance on the court's judgment was plainly justified, and she would certainly be prejudiced if she or the Robinsons were required to relitigate the property's title. For these reasons we conclude that *Jones v. Hunt* is inapposite.

▓▓▓ Mr. Venison also claims that Ms. Edwards was not a *bona fide* purchaser because she was on constructive notice that there was defect in the title, simply because the Robinsons held a tax deed. In some situations a tax deed might put the purchaser of real property on inquiry notice.[8] *See generally Clay Properties, Inc. v. Washington Post Co.,* 604 A.2d 890, 895 (D.C.1992) (en banc) (discussing inquiry notice). In this case, however, the underlying action was motivated by a desire to quiet title to the property so that the Robinsons could convey good title to Ms. Edwards. Admittedly, as her counsel told the trial court, Ms. Edwards' lender "declined to extend the loan on a recorded tax deed alone." However, neither Ms. Edwards nor her lender was relying only on the tax deed as proof of good title when she bought the property. She was also relying, as she was entitled to do, on the judgment which the Robinsons had obtained. Thus we find no basis in the record for concluding that Ms. Edwards was not a *bona fide* purchaser.[9]

---

8. *But see* D.C.Code § 47–1303.3(b) (1997) (a tax deed "shall be prima facie evidence of a good and perfect title in fee simple to the bid off property").

9. There is absolutely no merit in Mr. Venison's argument that Ms. Edwards is not a *bona fide* purchaser because she purchased the property without waiting until the period

## III

Finally, Mr. Venison complains that the Robinsons failed to join an indispensable party under Super. Ct. Civ. R. 19, and that the trial court therefore abused its discretion when it refused to set aside the default judgment. He claims that since the Robinsons did not obtain a tax deed to the property until 1993, he still had title to the property until that time. By Mr. Venison's reasoning, his present wife, Bessie Venison, acquired dower rights in the property when he married her on October 7, 1988, *see* D.C.Code § 19–102 (1997), and was thus an indispensable party because her rights were impaired by the default judgment. Bessie Venison herself, however, has not made any claim of a dower interest in the property, and William Venison has not asserted that he was prejudiced by her not being a party to the underlying action. Nevertheless, even though the indispensable party issue was not raised until after final judgment was entered, Mr. Venison contends that further proceedings are required concerning Mrs. Venison's status as a possibly indispensable party. *See Raskauskas v. Temple Realty Co.*, 589 A.2d 17, 20 (D.C.1991); *Flack v. Laster*, 417 A.2d 393, 399–400 (D.C.1980). *But see Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) (different factors apply after judgment has been entered).

We decline to consider this issue. As appellees point out in their brief, the judgment has no effect on Mrs. Venison's rights; indeed, she has the same rights now, whatever they may be, that she has always had. More importantly, she has never asserted a claim in relation to the Tennessee Avenue property, and she may never do so. In these circumstances, we see no reason to remand the case and require the trial court to conduct an inquiry which does not affect the rights of the actual parties to this litigation and which may never have any practical conse-

for appealing from the default judgment had

quences for anyone else. We therefore affirm the judgment, without prejudice to any rights that Bessie Venison, on her own behalf, may choose to assert in the future.

*Affirmed.*