Karen H. JOHNSON, et al., Appellants,

v.

PAYLESS SHOE SOURCE, INC., Appellee.

No. 02–CV–1182.

District of Columbia Court of Appeals.

Argued Nov. 4, 2003.
Decided Feb. 5, 2004.

Edwin C. Brown, Jr. for appellants.

Juli Z. Simonyi, with whom Aaron Handleman was on the brief, for appellee.

Before TERRY and RUIZ, Associate Judges, and KING, Senior Judge.

RUIZ, Associate Judge:

Plaintiff-appellant, Karen Johnson, appeals the trial court's decision to grant the motion of defendant-appellee, Payless Shoe Source, Inc., to dismiss the complaint for lack of service of process, and on the ground that the action is barred by the statute of limitations.[1] After considering the arguments and reviewing the record, we conclude that the trial court erroneously dismissed plaintiff's action, and accordingly remand the case for trial or other proceedings consistent with this opinion.

## I.

Plaintiff filed a civil action in the Superior Court on September 28, 2001 seeking damages in the amount of $25,000 for personal injuries she sustained when, in the course of selecting among defendant's footwear merchandise, a chair collapsed from under her, causing her to fall to the floor and be struck on the head by the chair's backrest. It is undisputed that plaintiff filed her action on the day that the statute of limitations period was set to expire. Plaintiff avers that she served her complaint on defendant on October 9, 2001 through its statutory agent—the Department of Consumer and Regulatory Affairs, Corporate Division ("DCRA")—because

defendant did not then have a registered agent within the District of Columbia.[2]

On December 7, 2001, the clerk of the Superior Court dismissed appellant's case for failure to file proof of service as required by Superior Court Rule of Civil Procedure ("Rule") 4(m). *See* SUPER. CT. CIV. R. 4(m) (requiring plaintiff to file proof of service within sixty days of filing the complaint, or else be subject to automatic dismissal without prejudice); *see also Cameron v. Washington Metro. Area Transit Auth.*, 649 A.2d 291, 294 (D.C. 1994) (explaining that the rule confers no discretion with respect to dismissal in the event of noncompliance). The clerk of the Superior Court then mailed a notice of dismissal to defendant's corporate address on December 12, 2001. Although it is not clear in the record, defendant apparently received the notice some time shortly after it was dispatched. On December 17, 2001, plaintiff timely filed a motion to vacate the involuntary dismissal pursuant to Rule 41(b)—oftentimes, as here, colloquially captioned as a "motion to reinstate" the complaint. *See* SUPER. CT. CIV. R. 41(b) (authorizing the trial court, *inter alia*, to vacate a Rule 4(m) dismissal if the plaintiff files a motion within fourteen days of the dismissal's entry demonstrating "good cause" why the case should not be dismissed). Plaintiff's motion stated that her process server mailed an affidavit of service to the court on October 22, 2001,

---

1. For clarity of discussion, we use the party labels applied in trial proceedings. We refer to appellant as plaintiff and appellee as defendant.

2. With the complaint served on DCRA, plaintiff's counsel swore an affidavit attesting to his unsuccessful attempt to serve "C.T. Corporations," which advised counsel that it had ceased acting as a registered agent for defendant approximately one week before the complaint was filed. Upon further investigation, counsel concluded that defendant did not

then have a registered agent within the District of Columbia. This affidavit, according to plaintiff, was a prerequisite to DCRA's acceptance of service of process as statutory agent. As a consequence of her belief that process was correctly served on DCRA on October 9, plaintiff maintains on appeal that defendant's responsive pleading was due no later than October 30, 2001. *See* SUPER. CT. CIV. R. 12(a)(1) (requiring defendant to serve an answer within twenty days after being served with the summons and complaint).

but surmised that the affidavit of service must have been delayed or lost in the mail as a consequence of the anthrax contamination of the Brentwood post office facility that processed the postal mail addressed to the courts of this jurisdiction at the relevant time. Because neither plaintiff nor her process server retained a copy of the purportedly lost affidavit of service, plaintiff attached a new affidavit by her process server dated December 14, 2001 attesting to the service of process on DCRA on October 9, 2001. The motion to reinstate was thereafter granted on January 3, 2002 by the motions court, Judge Jackson. Importantly, however, plaintiff admits that neither she nor the court sent a copy of the motion or the resulting order to defendant.[3]

On February 5, 2002, the clerk of the Superior Court entered a default judgment against defendant for failure to respond to the complaint. *See* SUPER. CT. CIV. R. 55(a) (authorizing the clerk to enter default when a party against whom judgment is sought has failed to plead or otherwise defend within the time allowed by the rules); *see also* SUPER. CT. CIV. R. 12(a)(1) (requiring defendant's answer within twenty days of service of process). On February 14, 2002, defendant filed a consent motion to vacate the default, which was quickly granted. Thereafter, on March 25, 2002, defendant filed a contested motion (1) to dismiss plaintiff's complaint under Rule 12(b) for failure to re-serve her complaint on defendant following "reinstatement" of the case on January 3, or alternatively, (2) to reconsider the Rule 41(b) motion to reinstate the complaint on the ground that defendant did not receive notice of this motion and thus was denied an opportunity to oppose it. On June 7,

2002, the trial court, Judge Rankin, issued an order dismissing plaintiff's complaint (1) for insufficiency of service of process, and (2) on the ground that it had reconsidered plaintiff's motion to reinstate the complaint and reversed the January 3 order of the motions judge vacating the dismissal. Having determined that the motions judge should not have vacated the dismissal without providing defendant an opportunity to oppose plaintiff's motion, the trial judge agreed with defendant that plaintiff's action was barred by the statute of limitations. This appeal followed.

## II.

We now turn to evaluate each of the bases upon which the trial court dismissed plaintiff's complaint.

### A. Insufficiency of Service of Process

 "[S]ince Super. Ct. Civ. R. 52(a) does not require the trial court to issue findings of fact or conclusions of law on motions under Rule 12(b), this court must, as a practical matter, conduct an independent review of the record whenever the trial court, as was the case here, grants a motion to dismiss without issuing findings of fact or conclusions of law." *Vaughn v. United States,* 579 A.2d 170, 172–73 (D.C. 1990). Although defendant made several arguments as to why service of process was improper, see discussion of other arguments at pages 1253–55, *infra,* the motion granted by the trial court was predicated on the contention that plaintiff was required to re-serve her complaint once it had been "dismissed" on December 7, 2001, even though it was "reinstated" on January 3, 2002. This is the argument in support of the trial court's ruling pressed in the brief on appeal.

---

**3.** With minor handwritten corrections, the motions court simply adopted plaintiff's proposed order, which, by its own terms, failed

to indicate that copies were to be sent to anyone other than plaintiff's counsel.

We disagree that the complaint had to be re-served·for there to be effective service of process. Rule 41(b) provides that any involuntary order of dismissal, including, as here, those entered under Rule 4(m) for failure to timely file proof of service,

> *shall not take effect* until fourteen (14) days after the date on which it is docketed, and *shall be vacated upon* the granting of a motion filed by plaintiff within such 14 day period showing good cause why the case *should not be* dismissed.

SUPER. CT. CIV. R. 41(b) (emphasis added).[4] The plain meaning of Rule 41(b) clearly indicates that an involuntary dismissal is vacated once the plaintiff satisfies the requirements of timeliness and "good cause," such that, as a legal matter, once the dismissal is vacated, it is a nullity and the case retains the procedural status that existed prior to the entry of the order of dismissal. Although, as here, motions under Rule 41(b) are often captioned as seeking "reinstatement," convenient (but inexact) labeling does not alter the operation of the rule. Despite the connotation imparted by use of the word "reinstate," an action is not revived or brought anew upon entry of an order vacating dismissal under Rule 41(b); the procedural clock is not reset, nor are valid filing and service of the complaint rendered ineffective. Based on the plain meaning of Rule 41(b), we conclude that plaintiff's complaint was never effectively dismissed, therefore obviating the need to re-file or re-serve the complaint under Rule 4.

An independent review of the record, *see Vaughn,* 579 A.2d at 172–73, further reveals that defendant's other variously asserted arguments for a Rule 12(b) dismissal lack merit. Defendant argued in the trial court that dismissal was warranted because (1) service on its statutory agent was improper absent a copy having been mailed to defendant's corporate address as required by Rule 4(h), and (2) the complaint was not served until December 4, 2001—more than sixty days after its filing on September 28, 2001. The first argument fails for the simple reason that a plaintiff is required to mail a copy of the process paperwork to a defendant's corporate address only if the statute authorizing the agent to receive process so provides. *See* SUPER. CT. CIV. R. 4(h)(1). The controlling statute authorizes service upon the mayor when, among other reasons, the registered agent cannot be found with reasonable diligence and does not require a plaintiff to deliver a copy of the process paperwork to the defendant's corporate address. *See* D.C. CODE § 29–101.108(b).[5] The statute contemplates that

---

4. The particular language at issue here does not appear in the federal counterpart to local Rule 41(b). *Compare* FED. R. CIV. P. 41(b) *with* SUPER. CT. CIV. R. 41(b); *see also* SUPER. CT. CIV. R. 41(b) cmt. (noting that the local rule adds language to the federal rule making it clear that the court may dismiss an action *sua sponte* ). The federal rule, like the Superior Court rule, requires the plaintiff to file proof of service or a waiver of service but—unlike the Superior Court rule—does not provide a specific time period during which proof of service must be filed. *Compare* FED. R. CIV. P. 4(l) *with* SUPER. CT. CIV. R. 4(m).

5. Section 29–101.108(b) provides:

> Whenever a foreign corporation authorized to transact business in the District fails to appoint or maintain a registered agent in the District, or whenever any registered agent cannot with reasonable diligence be found at the registered office of the corporation in the District, or whenever the certificate of authority of a foreign corporation shall be revoked, the Mayor shall be an agent of the foreign corporation upon whom any process against the corporation may be served and upon whom any notice or demand required or permitted by law to be served upon the corporation may be served. *Service on the Mayor of any process, notice, or demand shall be made by*

after the mayor is served, it is "the [m]ayor [who] shall immediately cause one of the copies to be forwarded by registered or certified mail to the corporation at its principal office ...." D.C. CODE § 29–101.108(b). In this case, the executive, through DCRA, in fact fulfilled this charge. Consistent with the obligation imposed by the statute, plaintiff tendered proof of reasonable diligence by representing, upon "information and belief," that defendant did not have a registered agent within the District of Columbia at the time service was effectuated. This representation was made in a sworn affidavit of counsel submitted to DCRA as a prerequisite to its acceptance of service of process for the defendant. See note 2, *supra.*[6]

 Our review of defendant's final argument that it was untimely served on December 4, 2001, not only reveals that the contention is unfounded, but definitively resolves against defendant the ultimate question of proper service. Defendant argued in the trial court that it "ultimately received the summons through [DCRA] but not until December 4, 2001." Regardless of when defendant received the summons, DCRA acknowledged in its cover letter to defendant that service was made upon DCRA on November 2, 2001. In the absence of any argument demonstrating that DCRA was not defendant's proper statutory agent, it is the November 2 date that controls. Just as actual notice of an action cannot cure ineffective service of process, neither may lack of actual notice forestall effective service of process. *Cf. Bulin v. Stein,* 668 A.2d 810, 814 (D.C. 1995) (noting that actual notice is immaterial to service of process) (citation omitted). In cases where, as here, the defendant claims to have first learned of the action some time after service upon its agent duly authorized by appointment or by law, we hold that the effective date of service for purposes of Rule 4(m) is the date on which the agent was served.[7] *See generally* SUPER. CT. CIV. R. 4(h)(1) (providing that service of process upon a corporation "shall be effected" upon delivery of a copy of the complaint, summons, and initial order to a duly authorized agent). Although DCRA's account of the date on which it was served (*i.e.,* Novem-

---

*delivery to and leaving with the Mayor, or with any clerk having charge of the Mayor's office, duplicate copies of the process, notice, or demand and a fee of $ 10.* If any process, notice, or demand is so served, the Mayor shall immediately cause one of the copies to be forwarded by registered or certified mail to the corporation at its principal office in the state under the laws of which it is organized or at its last known address.

D.C. CODE § 29–101.108(b) (2001) (emphasis added). During oral argument on appeal defendant's counsel contended that § 29–101.108(c)—which requires that a copy be sent to the corporate defendant—should apply because plaintiff claimed in the trial court that defendant had no registered agent in the District of Columbia. See note 2, *supra.* We think, however, that subsection (b) clearly controls. By its own terms subsection (c) applies only in those cases where a foreign corporation transacts business in the District

of Columbia without a certificate of authority, which, according to representations made by defendant's counsel during oral argument, is not the case here.

6. For its part, defendant maintains that it had a registered agent in the District of Columbia at all relevant times, namely, Corporations Service Company. Defendant has not argued, however, that plaintiff's affidavit fails to establish "reasonable diligence" in ascertaining the absence of a registered agent, such that service on DCRA was improper under D.C.Code § 29–101.108(b).

7. Any perceived unfairness to defendant resulting from lack of actual notice, *e.g.,* entry of a default judgment for failure to file a timely answer, *see* SUPER. CT. CIV. R. 55, can be addressed by the trial court upon a showing of mistake, inadvertence, excusable neglect, fraud, etc., under Rule 60(b).

ber 2) varies from the account attested to by plaintiff's process server (*i.e.*, October 9), it is indisputable that even the later date falls within the sixty-day period in which the rules require process be served. *See* SUPER. CT. CIV. R. 4(m). Thus, by defendant's own account, its statutory agent was served in a timely manner. We accordingly conclude that the trial court's June 7 order dismissing plaintiff's complaint for failure to effect service of process is not supported by the rules, the applicable statute, or the record.[8]

### B. *Statute of Limitations*

■ Defendant moved the trial court to reconsider the motions judge's grant of plaintiff's motion to vacate the dismissal of her complaint, arguing that it had not been served with a copy of either the motion or the resulting order. Concerned that the defendant had not been notified, the trial judge posited during oral argument on the motion that the January 3 reinstatement order amounted to an *ex parte* denial of due process:

> You [plaintiff] come in before the Court and obtain an order from the Court to reinstate the case because you've shown through diligence and filed your proof of service, but the Court didn't observe its own rules and, and did not question the fact that this was an ex-part[e] application. And, indeed, even the order issued by the Court made no provision to notify the defendant that it was issuing the order.

Treating the grounds justifying reconsideration of the motion to reinstate the

complaint as a presumptive basis for dismissing it, the court further explained:

> I do believe that the plaintiff was acting in, in good faith here, [in] mov[ing] to get the case reinstated, but overlooked another procedural rule, one that is fundamental and that is the requirement that the other side had notice[ ].
>
> . . .
>
> You know, it may sound like it's, it doesn't make sense, but it does make sense, and so we're going to, not only are we going to keep that rule, the requirement, but we're going to enforce that rule. So, I think that even though we have what appears to be a very harsh result with plaintiff in this matter, I believe that the proper outcome for the Court . . . is to enter the, the granting of defendant's motion. . . . [I]t appears to me that, that the defendant has made its case for dismissal, plaintiff's failure to properly notify the defendant that the plaintiff was seeking relief of the Court. I believe that the Court erred in acting on the motion which had been improperly filed and then in issuing an order without sending the defendant a copy of the order. So for the reasons that have been urged .ᵢ. this case is dismissed.

Thereafter, the court entered defendant's proposed written order, which provides in relevant part:

> and it is further ORDERED
>
> that the Court is reconsidering its[9] Motion to Reinstate Plaintiff's Com-

---

8. This court has observed, moreover, that even where technical deficiencies in service of process exist, dismissal is appropriate only if it is clear that the plaintiff cannot obtain effective service. *See Bulin*, 668 A.2d at 813–14 (quoting *Novak v. World Bank*, 227 U.S.App. D.C. 83, 88, 703 F.2d 1305, 1310 (1983) ("Dismissal is not appropriate when there exists a reasonable prospect that service

can be obtained.")) (other citations omitted). As defendant represented to the trial court that Corporations Service Company was its registered agent in the District of Columbia, it was reasonable to expect that service could be effected.

9. Use of the word "its" is seemingly a typographical error. The motion to reinstate the

plaint and therefore, pursuant to Rule 41 and Rule 60(b),

It is, this 7th day of June, 2002, hereby:

ORDERED that Reconsideration of Plaintiff's Motion to Reinstate is Granted and Defendant's Motion to Dismiss Plaintiff's Complaint with Prejudice pursuant to the Statute of Limitations is GRANTED.[10]

On appeal, plaintiff argues that the trial court erred because the January 3 order of the motions court vacating the dismissal is sound. Specifically, plaintiff contends that defendant was not denied due process of law because, under Rule 5(a), a party in default for failure to appear is entitled to be served only with subsequent pleadings raising new or additional claims, and is not entitled to be served with subsequent mo-

tions of any kind.[11] The argument relies on two predicates: (1) defendant was in default at the time the motion to reinstate was filed because it failed to file a responsive pleading by October 30, 2001, see note 2, *supra*, and (2) a Rule 41(b) motion to vacate dismissal is not a pleading rasing new or additional claims within the meaning of Rule 5(a). Defendant responds by arguing that the trial court acted within its discretion to correct the January 3 order because it suffered from due process infirmities. In support of this contention, defendant argues (1) that it was not in default at the time plaintiff's motion to vacate the dismissal was filed because the clerk of the court did not enter the default until February 5, 2002, and, (2) in any event, the precise language of Rule 5(a), unlike the federal rule,[12] makes no exception for the

---

case was not made *sua sponte*, but rather by plaintiff.

**10.** We note in passing that defendant's proposed order—as adopted by the trial court—invokes Rules 41 and 60(b) as authorizing reconsideration of plaintiff's motion. Neither rule confers this power. *See Williams v. Vel Rey Properties, Inc.*, 699 A.2d 416, 418 n. 6 (D.C.1997) (observing that the Superior Court Rules of Civil Procedure nowhere provide for a "motion to reconsider"); SUPER. CT. CIV. R. 41 (concerning "dismissal of action"); SUPER. CT. CIV. R. 60(b) (empowering the trial court to relieve a party from *final* judgment or order); *see also Carmel v. Belmont Radio & TV Serv.*, 137 A.2d 566, 566 (D.C. 1958) (holding that an order reinstating a case is not appealable because it is not a final order) (citations omitted). This is not to say, however, that a trial judge is without the inherent authority to reconsider his or her own prior rulings. We have recognized the trial court's practice of entertaining motions to reconsider, and find no fault with it as a general proposition subject to other competing principles such as the "law of the case" doctrine. *See Williams*, 699 A.2d at 419; *Blyther v. Chesapeake & Potomac Tel. Co.*, 661 A.2d 658, 662 (D.C.1995) (Ruiz, J., concurring) (recognizing use of motions to reconsider); *see also Pannell v. District of Columbia*, 829 A.2d 474, 477 (D.C.2003) (explaining that

the "law of the case" doctrine "bars a trial court from reconsidering the same question of law that was presented to and decided by another [judge] of coordinate jurisdiction . . . .") (quoting *Tompkins v. Washington Hospital Center*, 433 A.2d 1093, 1098 (D.C.1981)).

**11.** Rule 5(a) provides:

*Service: When required.* Except as otherwise provided in these Rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the Court otherwise orders, every paper relating to discovery required to be served upon a party unless the Court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties. Any pleadings asserting new or additional claims for relief against any party in default must be served upon such party in the manner provided for service of summons in Rule 4. SUPER. CT. CIV. R. 5(a).

**12.** *See* FED. R. CIV. P. 5(a) ("*No service need be made on parties in default for failure to appear except that* pleadings asserting new claims or additional claims for relief against them shall be served upon them in the man-

service of motions on a party, whether in default or not.

We need not settle these competing claims to resolve this appeal. Assuming, without deciding, that defendant was entitled either under Rule 5(a) or as a matter of due process to be served with a copy of plaintiff's Rule 41(b) motion and the resulting order, and assuming further that this lack of notice justified the trial court's decision to reconsider the ruling of the motions court granting plaintiff's Rule 41(b) motion, see note 10, *supra,* we nonetheless conclude that the court abused its discretion in dismissing plaintiff's complaint.

■ The decision whether to vacate a dismissal under Rule 41(b) reposes in the trial court's discretion. *See Cameron,* 649 A.2d at 294. However, "it is a fundamental principle of appellate deference to the exercise of discretion that it must be undertaken with a proper appreciation of all relevant factors...." *Wagshal v. Rigler,* 711 A.2d 112, 114 (D.C.1998) (citation omitted). In the present case, the trial court treated the grounds for reconsidering plaintiff's motion (*i.e.,* the denial of due process to defendant as a result of having been denied notice of the motion in the first place) as a presumptive basis upon which to dismiss plaintiff's complaint.[13] In so doing, the court mistakenly conflated separate analyses, and did not give consideration to the factors we identified in *Cameron* as being necessarily relevant to the trial court's discretionary decision on a motion to vacate a dismissal entered for failure to file timely proof of service. 649 A.2d at 294; *see Debose v. Ramada Renaissance Hotel,* 710 A.2d 880, 883 (D.C.

1998) (reversing trial court's denial of motion to reinstate brought under Rule 60(b)(1) because the court "took too limited a view of the factors relevant to the exercise of its discretion") (citing *Johnson v. United States,* 398 A.2d 354 (D.C.1979)); *Wagshal,* 711 A.2d at 115 (reversing the denial of a Rule 41(b) motion to vacate a Rule 4(m) dismissal because the trial court improperly framed the issue as "whether [the p]laintiff ha[d] shown good cause for failure to timely file proof of service," rather than whether the plaintiff had shown "good cause why the case should not be dismissed" as required by Rule 41(b)). We do not question whether the trial court had cause on due process grounds to reconsider plaintiff's motion, but whether, in doing so, it employed the proper analytical framework.

■ A litigant is "entitled to have the trial judge exercise ... discretion unfettered by erroneous legal thinking." *Wright v. United States,* 508 A.2d 915, 919 (D.C.1986). Where this has not occurred, we ordinarily remand for reconsideration of the ruling under the proper standard. *See id.* at 919–20. We need not do so, however, when the particular record would allow the trial judge "but one option." *Id.* at 920. We conclude that a remand for reconsideration is unwarranted because on this record the trial court had only one option, to vacate the dismissal and reinstate the complaint. *See Johnson,* 398 A.2d at 364.

■ In *Bulin,* we concluded that "the principal factor to be considered in the good-cause inquiry is the reason for the plaintiff's failure to comply with the rule." 668 A.2d at 815 (citation omitted). Consis-

ner provided for *service summons in rule 4.*") (italics indicate deletions from local rule).

**13.** The court stated, "it appears to me that, that the defendant has made its case for dis-

missal, *plaintiff's failure to properly notify the defendant that the plaintiff was seeking relief of the Court.*"

tent with Rule 41(b)'s distinct focus on "why the case should not be dismissed," the trial court should also take into account (1) prejudice, if any, to the plaintiff, (2) prejudice, if any, to the defendant, and (3) whether the plaintiff has made a showing of reasonable diligence in otherwise attempting to comply with the rules. *See Wagshal,* 711 A.2d at 116 (citations omitted); *see also id.* at 116 n. 10 (explaining that the relevant focus of federal Rule 4(m) on why service was not timely made is narrower than local Rule 41(b)'s inquiry into why the case should not be dismissed). Applying these principles to the record before us, we are obliged to conclude that plaintiff's case should not have been dismissed pursuant to Rule 4(m).

First and foremost, plaintiff's reason for failing to file timely proof of service in conformity with Rule 4(m), the anthrax contamination that seriously compromised postal infrastructure and produced numerous systemic delays in the delivery of mail to this courthouse, was apparently deemed compelling by the motions court that vacated the dismissal on January 3, 2002. Nothing in either the trial court's analysis upon reconsideration, nor the record, convinces us that the motions court incorrectly credited this unique event as sufficient justification for plaintiff's failure to file timely proof of service.[14] Second, denial of the plaintiff's motion to vacate dismissal of her complaint would result in extreme prejudice to plaintiff. In light of the fact that the action was filed on the last day of the limitations period, a denial of the motion would convert what ordinarily is a dismissal without prejudice under Rule 4(m) into a dismissal with prejudice. *See Wagshal,* 711 A.2d at 113 (explaining that

"because the statute of limitations had run, [a dismissal without prejudice pursuant to Rule 4(m)] would in effect be a dismissal with prejudice"). Apart from running contrary to the clear intent of the rule, *see Gross v. District of Columbia,* 734 A.2d 1077, 1087 (D.C.1999) ("Rule 4(m) evidences its mechanical rather than dispositive nature.") (quoting *Wagshal,* 711 A.2d at 114), such a result also is contrary to what we have expressed in analogous contexts as a "general preference for trial on the merits." *Mourning v. APCOA Std. Parking, Inc.,* 828 A.2d 165, 167 (D.C.2003) (discussing relief from final judgment on account of excusable neglect under Rule 60(b)) (citing *Johnson v. Berry,* 658 A.2d 1051, 1053 (D.C.1995)); *Lester v. District of Columbia,* 806 A.2d 206, 208 (D.C.2002) (examining closely the trial court's refusal to set aside a default judgment where an attorney was not diligent in tracking the status of the complaint because "there is a strong presumption favoring adjudication of the merits") (citing *Venison v. Robinson,* 756 A.2d 906, 910 (D.C.2000)); *Smith v. Fairfax Viii Condo.,* 775 A.2d 1085, 1094 (D.C.2001) (stating that where a litigant fails to prosecute or comply with a court order, the trial court must carefully exercise its discretion to dismiss a case under Rule 41(b) because dismissal is a severe sanction and there is a counterbalancing preference for trial on the merits) (quotation marks and citations omitted). Third, we perceive no undue prejudice flowing to defendant as a consequence of reinstatement. During oral argument, counsel indicated that had defendant been given the opportunity to oppose plaintiff's Rule 41(b) motion, it would have urged the court to consider that service of process had been ineffective in the first place and that the

14. Defendant has not challenged the propriety of filing by mail *per se,* but rather the sufficiency of what it considers a bromidic "lost mail" excuse. Although filing in person is preferred over filing by mail, we note that

plaintiff's decision to mail proof of service conforms to a method of filing presently accepted by the Civil Division Clerk's Office. *See* DISTRICT OF COLUMBIA PRACTICE MANUAL, VOL. II, 25–4 (2002).

motion itself fails to show good cause why the case should not be dismissed. These arguments would not have made a difference, however, as we have rejected both of them in our discussion above. Defendant additionally claimed that it would be prejudiced by reinstatement because its statute of limitations defense would then be foreclosed. That defense was precluded, however, when the plaintiff timely filed her action on the last day of the limitations period, and, therefore, defendant cannot claim prejudice that would justify denying reinstatement. Finally, we are assured that the motions court correctly vacated the dismissal because plaintiff has demonstrated diligence in otherwise complying with the rules of procedure by effecting service of process on DCRA within the requisite deadline and filing a timely motion to vacate the dismissal under Rule 41(b). On this record, denial of plaintiff's Rule 41(b) motion would be an abuse of discretion.

We accordingly remand the case for trial or other proceedings consistent with this opinion.

*So ordered.*