**DIGITAL BROADCAST CORPORATION,**
Appellant,

v.

**ROSENMAN & COLIN, LLP, Appellee.**

**No. 00–CV–533.**

District of Columbia Court of Appeals.

Submitted April 26, 2001.

Decided April 15, 2004.

Michael J. Trevelline was on the brief for appellant.

Richard A. Gross and Jennifer S. Huber, Washington, D.C., were on the brief for appellee.

Before RUIZ, Associate Judge, and KING and KERN, Senior Judges.

RUIZ, Associate J.

Digital Broadcast Corporation, a former client of the law firm of Rosenman & Colin, LLP, appeals a default judgment against it in an action for non-payment of legal fees. The trial court entered a default against Digital Broadcast and denied its motion to reconsider for failure to show either good cause or a *prima facie* defense. After an *ex parte* hearing on damages, the court entered a judgment of default. Digital Broadcast appeals, alleging that the trial court abused its discretion. Finding no such abuse, we affirm.

## I. Facts

Digital Broadcast hired Rosenman & Colin for legal services related to a securities offering from November 1997 to August 1998. On June 9, 1999, the law firm initiated this suit, alleging that Digital Broadcast did not pay $55,378 owed for those services.

Upon receipt of the complaint, the trial court scheduled an initial conference for September 10. On July 27, Digital Broadcast requested an enlargement of time to respond to the complaint of "20 days after the court rules on the intended motion *pro hac vice*" of its general counsel, John C. Nimmer, a Nebraska attorney.[1] On August 27, Digital Broadcast filed a motion to continue the initial conference in order to obtain local counsel, a requirement for Mr. Nimmer's admission *pro hac vice*. *See* Super. Ct. Civ. R. 101(a)(3). On September 8, the trial court granted both requests; Digital Broadcast was given forty-five days (until October 22) to respond to the complaint, and the initial conference was rescheduled for October 29. On October 22, Digital Broadcast moved to admit Mr. Nimmer *pro hac vice* and sought a further twenty-day enlargement of time to respond to the complaint and for the initial conference, to be calculated from the date of Mr. Nimmer's admission. To demonstrate diligence in its search for the local counsel required for Mr. Nimmer's admission *pro hac vice*, Digital Broadcast attached two letters to its motion from attorneys declining to represent it,[2] and requested that the trial court waive the requirement of local counsel. On October 29, the initial conference took place as scheduled. Digital Broadcast had not responded to the complaint and failed to appear, and the trial court entered a default.[3]

The court responded to Digital Broadcast's second (October 22) motion for an enlargement of time on November 2, 1999, granting Mr. Nimmer's motion for admission *pro hac vice*, waiving the requirement of local counsel, but denying its motion to continue as moot, "it appearing that a default has previously been entered."

On November 24, Digital Broadcast moved to set aside the default. It alleged that it had good cause not to appear because, under Superior Court Civil Rule 101(a)(2), an attorney not admitted to practice before the District of Columbia Court of Appeals and not admitted *pro hac vice* may do nothing more than attempt to secure a continuance. It did not present an affirmative defense to the complaint. However, in this motion, and each of the previous motions requesting a continuance, it stated that its "initial defense strategy is to object" that the Superior Court did not have personal jurisdiction over Digital Broadcast because it is a Delaware corporation with its home office in New York, and "conduct[s] business in several states—inclusive of Nebraska" but not in the District of Columbia. It also argued that the District of Columbia is an inconvenient forum because the law firm also is based in New York.

---

1. At the time Mr. Nimmer could only request admission *pro hac vice* for the limited purpose of seeking a continuance because he was still in the process of securing the proof of payment to the Court of Appeals' Committee on Unauthorized Practice necessary for a motion for admission *pro hac vice*. *See* D.C.App. R. 49(c)(7) (1999); Super. Ct. Civ. R. 101(a)(2) (1999). Mr. Nimmer filed a motion for admission *pro hac vice* on August 10, which was denied because it did not include the required Superior Court filing fee.

2. The letters were dated October 18 and October 20, 1999.

3. The jacket entry states that "Deft. did not appear. Default entered."

■ The trial court denied the motion to set aside the default on December 17, explaining that the defendant "had ample time to secure counsel in time to respond to the complaint and appear at [the] scheduled hearing" and had "fail[ed] to comply with the applicable rules of this court governing a motion to vacate a default [ ]." On December 21, Digital Broadcast filed a motion to reconsider denial of its motion to set aside the default, which the trial court denied on January 11, 2000 "for the failure of the movant to comply with Rule 55(c)." After an *ex parte* hearing on damages on March 23, 2000, the court entered a default judgment in favor of the law firm for the full amount alleged in the complaint plus costs.[4]

■ On February 9, 2000, Digital Broadcast appealed the default entered on October 29, 1999, which this court dismissed as an unappealable interlocutory order. It then filed this timely appeal of the default judgment.[5]

## II. Analysis

The parties differ on the test this court should apply to determine whether the entry of default was an abuse of discretion. Digital Broadcast asserts that the standard disfavoring dismissals and defaults under Superior Court Civil Rule 16–II,

established in *Durham v. District of Columbia*, 494 A.2d 1346, 1350 (D.C.1985), is appropriate. Rosenman & Colin urges the more deferential standard for default judgments articulated in *Miranda* under Superior Court Civil Rule 60(b). *See* 754 A.2d at 279. We disagree with both; the correct standard to be applied in this case is the one set out in Superior Court Civil Rule 55(c).

Rule 16–II authorizes the trial court to impose a range of sanctions for failure to appear at a pretrial conference, including entry of a default or dismissal of the case:

> If counsel or a party proceeding pro se fails to appear at a pretrial, settlement, or status conference, the Court may enter a default, a dismissal of the case with or without prejudice, or take such other action, including the imposition of penalties and sanctions, as may be deemed appropriate.

Rule 16–II (1999). In *Durham* we held that the sanction of dismissal or default for failure to attend a pretrial conference should be used "sparingly," and only upon a showing of a willful and deliberate delay, of prejudice to the opposing party, and after considering less severe sanctions. *See* 494 A.2d at 1350.

---

**4.** If a default is entered in a non-liquidated damages case, the party entitled to judgment many move for entry of judgment. *See* Super. Ct. Civ. R. 55(b)(2). Once a defendant has appeared in a case, the defaulted party shall be served with a "written notice of the application for judgment at least 3 days prior to the hearing on such application." *Id.* Before judgment may be entered, the trial court determines damages by "conduct[ing] such hearings or order[ing] such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any applicable statute." *Id.* At the hearing on damages, the defaulted party is entitled to present evidence in mitigation of damages and to cross-examine witnesses.

*See Firestone v. Harris*, 414 A.2d 526, 528 (D.C.1980). In the present case, the record on appeal does not include a transcript of the hearing on damages and appellant does not allege lack of notice or challenge the trial court's *ex parte* proceeding.

**5.** A default is not a judgment but precludes the defaulted party from contesting liability. *See Lockhart v. Cade*, 728 A.2d 65, 68 (D.C. 1999). As a result, a default is an interlocutory order that is not appealable to this court. *See id.; Miranda v. Contreras*, 754 A.2d 277, 280, n. 4 (D.C.2000). To obtain appellate review of a Rule 55 default one must appeal the final judgment of default. *See id.*

Rule 55 requires the trial court to enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these Rules ...." Super. Ct. Civ. R. 55(a). Before a default is entered, the court may extend the time to plead in response to "a motion which shows good cause ...." Super. Ct. Civ. R. 55(a)(1). The court may set aside a default "[f]or good cause shown, and upon the filing of a verified answer setting up a defense sufficient if proved to bar the claim in whole or in part ...." Super. Ct. Civ. R. 55(c). No answer need be filed, however, if the party asserts a lack of subject-matter or personal jurisdiction. *See id.*

■ Rule 60(b) allows the court to "relieve a party or a party's legal representative from a final judgment, order, or proceeding" for a variety of reasons, including "any ... reason justifying relief from the operation of the judgment." Super. Ct. Civ. R. 60(b)(6) (1999). Our appellate review of motions to relieve a party from a default judgment under Rule 60(b) focuses on four factors: (1) whether the defaulting party had actual notice of the proceeding, (2) whether it acted in good faith, (3) whether it presented an adequate *prima facie* defense, and (4) whether it acted promptly when notified of the default. *See Venison v. Robinson*, 756 A.2d 906, 910 (D.C.2000) (reviewing a default judgment under the Rule 60(b) standard). Rule 60(b) does not provide the standard in this case because appellant challenged the entry of default in the trial court before the entry of judgment.[6] *See Clark v. Moler*, 418 A.2d 1039, 1042 (D.C.1980); *cf. Miranda*, 754 A.2d at 280 n. 4 (applying standard for setting aside judgments under Rule 60(b) where there was no challenge in the trial court to entry of default).

■ This brings us to the standards under Rules 16–II and 55, which are distinct. By its terms, Rule 16–II *permits* imposition of the "appropriate" sanction for a failure to appear for a conference: "a default, a dismissal of the case with or without prejudice, or ... other action, including the imposition of penalties and sanctions ...." Super. Ct. Civ. R. 16–II. We have held that Rule 16–II requires consideration of lesser sanctions before imposing dismissal or default and an explanation of the reasons for the chosen sanction. *See Durham*, 494 A.2d at 1350. Dismissal—or its functional equivalent for the defendant, default—is not warranted without an evaluation of the willfulness of the party's actions and the prejudice to the other party. *See id* at 1351. By its terms, on the other hand, Rule 55(a), *requires* entry of default against a party that has "failed to plead or otherwise defend." A default entered under Rule 55(a) may be set aside "for good cause shown and upon the filing of a verified answer setting up a defense sufficient if proved to bar the claim" or if the movant "asserts a lack of subject-matter or personal jurisdiction ...." Super. Ct. Civ. R. 55(c). Whereas a default under Rule 16–II is disfavored, it is presumed under Rule 55(a). The differences in these tests are justified by the marked dissimilarity between the actions of the defaulting party under each rule. A party defaulted under Rule 55 has done nothing to contest its liability—it has neither filed an answer nor asserted a lack of jurisdiction. A defendant defaulted (or, if a plaintiff, dismissed) under Rule 16–II has participated in the litigation, but failed to appear for a

---

**6.** Although Digital Broadcast's motions were styled as motions to set aside or alter "judgment of default"—which would appear to trigger review under Rule 60(b)—they are properly understood as motions to set aside the entry of default—requiring review under Rule 55—as no judgment had yet been entered. See note 5, *supra.*

conference. The *Durham* test for defaults under Rule 16–II is, therefore, designed to assure that the drastic sanction of default is justified under the circumstances of the case. Because the party defaulted under Rule 55 has indicated by its behavior that it has no valid defense, however, the same level of scrutiny is not necessary; this court need ensure only that there are no unusual circumstances that would justify not entering a default.[7]

■ The instant matter falls squarely within Rule 55. Notwithstanding that the trial court had extended the time to answer (allowing over four months to respond to the complaint) under Rule 55(a), Digital Broadcast had filed no responsive pleading and presented no defense. Thus, entry of default was required, as Digital Broadcast's motions for enlargements of time and admission of counsel *pro hac vice*, as well as its search for local counsel cannot substitute for its "fail[ure] to plead or otherwise defend." Super. Ct. Civ. R. 55(a). Even if we consider that Digital Broadcast's unelaborated mention—without supporting authority—that the Superior Court lacked personal jurisdiction was sufficient to satisfy Rule 55(a) or (c), that assertion is incorrect as a matter of law as we discuss *infra.* Therefore, both the trial court's initial entry of default and its denial of the motion to set it aside were proper under Rule 55.[8]

■ Rule 55(c) permits the trial court to set aside a default for "good cause." Here, there is no doubt that Digital Broad-cast knew of the complaint against it, the extended deadline for a response, and the date and time of the hearing—rescheduled at its request—that it failed to attend. In denying appellant's motion to set aside the default, the trial court found that Digital Broadcast "had ample time to secure counsel in time to respond to the complaint and appear at scheduled hearings." Digital Broadcast presented two letters from attorneys declining to represent it. Both were dated close to the continued hearing date and reflected that the attorneys had only recently been approached. Both letters pointed out the impending deadlines and potential consequence of non-compliance. Mr. Nimmer represented in an affidavit that he had contacted other lawyers as well without success. Although Mr. Nimmer's then-pending request for admission *pro hac vice* without the need for local counsel—subsequently granted by the court—might have persuaded another judge to set aside the default, the finding that Digital Broadcast failed to diligently search for local counsel despite a six-week enlargement of time to do so is, in effect, a determination that there was no "good cause" to set aside the default. Super. Ct. Civ. R. 55(c). On the present record, that determination was not an abuse of discretion.

■ The second factor under Rule 55(c), whether an adequate *prima facie* defense has been presented, also supports the decision of the trial court.[9] We read the trial

---

7. As noted in note 5, *supra,* the defaulted party retains the right to contest and mitigate unliquidated damages.

8. Although the trial court's jacket entry of default referring only to defendant's failure to appear at the scheduling conference suggests at first blush that default was entered as sanction under Rule 16–II, see note 3, *supra,* the fact that no responsive pleading or defense had been filed called for entry of default un-der Rule 55(a). Moreover, the trial court's written order of January 11 denying the motion to set aside the default makes clear that the trial court's action was based on the defendant's failure to "comply with Rule 55(c)."

9. We note that after it entered the default, the trial court granted Mr. Nimmer's request for admission *pro hac vice* without the need to retain local counsel. *See* Super. Ct. Civ. R. 101(a)(3) (requiring that "a member in good

court's comment that Digital Broadcast had not complied with the requirements of Rule 55(c) as a reference to the requirement of a verified answer or assertion of the court's lack of jurisdiction. Although the trial court did not explain why the asserted lack of personal jurisdiction was insufficient, we conclude that the assertion fails as a matter of law. Digital Broadcast's only asserted defense was that the Superior Court lacked personal jurisdiction because Digital Broadcast is incorporated and located elsewhere and has "no business operations in the District of Columbia." [10] In asserting that defense, Digital Broadcast bore the burden of alleging facts that, if proven, would demonstrate a lack of personal jurisdiction. *Cf. Venison*, 756 A.2d at 911–12 (holding that the simple assertion that the District of Columbia failed to follow the proper procedures in selling a property for delinquent taxes, without citing supporting evidence, is insufficient to establish a *prima facie* defense under Rule 60(b)). Digital Broadcast failed to meet that burden.

■■■ "A District of Columbia court may exercise personal jurisdiction over a person ... transacting any business in the District of Columbia ...." D.C.Code § 13–423(a)(1) (1995). The "transacting business" standard is coextensive with the minimum contacts necessary to establish personal jurisdiction under the Due Process Clause of the Constitution. *See Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 810–11 (D.C.1976) (en banc). Under our case law, there is no question that Digital Broadcast "transacted business" in the District of Columbia.

In *Fisher v. Bander*, 519 A.2d 162 (D.C. 1986), an out-of-state client secured the services of a Washington, D.C. law firm for legal services related to certain federal regulatory matters. *See id.* at 163. The client alleged that he made only a single trip to the District of Columbia concerning this matter, and had no other contact with the District. *See id.* When the law firm filed a complaint against the client seeking payment of its legal bills, the client contended that the Superior Court lacked personal jurisdiction because the client did not have the minimum contacts with the District of Columbia necessary to establish personal jurisdiction. *See id.* In determining whether constitutionally sufficient minimum contacts were present, this court applied the three-part test set forth by the Supreme Court in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). *See Fisher*, 519 A.2d at 164. First, this court found that "the District of Columbia has a substantial interest in providing a forum to redress wrongs inflicted upon its citizens by clients who fail to pay for professional services supplied in the District of Columbia by District of Columbia law firms." *Id.* Second, the client sought the special benefits of doing business with a Washington, D.C. law firm because of its expertise

standing of the District of Columbia Bar" must join of record as a condition of admission *pro hac vice*, unless the judge waives the requirement). Although Mr. Nimmer was thereafter able to fully represent Digital Broadcast in the proceedings, he did not file an answer. Instead, in the two motions to set aside the default he continued to assert lack of personal jurisdiction which, as noted in the text, is incorrect as a matter of law. No

defense on the merits has been suggested on appeal.

**10.** Digital Broadcast also asserted that the District of Columbia is an inconvenient forum for this litigation because the headquarters of both the plaintiff and defendant are located in New York. Because *forum non conveniens* is not a ground for setting aside a default under 55(c), however, we need not reach that question here.

in regulatory matters. *See id.* at 165. Third, "where an out-of-state client employs a District of Columbia attorney to perform services in the District of Columbia, it can hardly be said that litigation of a fee dispute with that same attorney in the same forum poses any undue burden upon the client." *Id.* This court, therefore, concluded that the Superior Court had personal jurisdiction over an out-of-state client of a District of Columbia law firm for the payment of legal fees. *See id.*

The facts presented in this case are identical to those of *Fisher* in all material respects. Digital Broadcast retained the services of the Washington, D.C. office of Rosenman & Colin to avail itself of its specialized expertise in securities regulation. The letter of engagement attached to the complaint reflects that Rosenman & Colin has offices in Washington, D.C., New York, and New Jersey. The engagement letter is written on stationery of the District of Columbia office. The fact that Digital Broadcast, like the defendant in *Fisher,* maintains no operations and conducts no other business in the District does not defeat personal jurisdiction. The only difference between the two cases, that the client in *Fisher* made one trip to the District of Columbia in the course of the representation, was immaterial to the court's holding in *Fisher.* By failing to allege any facts that would distinguish itself from the out-of-town client in *Fisher,* Digital Broadcast has not alleged an adequate *prima facie* defense.

Accordingly, because we perceive no abuse of discretion in the trial court's entry of default or in its denial of the motion to set it aside, the judgment is

*Affirmed.*