Marilyn HUDSON, Appellant,

v.

David SHAPIRO, Appellee.

No. 03–CV–1250.

District of Columbia Court of Appeals.

Argued Jan. 26, 2005.

Decided Feb. 8, 2007.

Leslie Ann Gerardo, with whom Martyn Liles, was on the brief, for appellant.

Richard L. Swick, with whom Richard W. Stevens, Washington, DC, was on the brief, for appellee.

Before FARRELL and REID, Associate Judges, and KERN, Senior Judge.

REID, Associate Judge:

Appellant Marilyn Hudson appeals from the trial court's denial of her motion to vacate judgment and set aside default relating to a lawsuit against her for legal fees, her third-party claim against appellee David Shapiro for reimbursement in the event she was deemed liable, and his counterclaim against her for additional legal fees. She primarily argues that the default judgment "was void [under Super. Ct. Civ. R. 60(b)(4)] due to various procedural defects," and therefore the trial court erred by not vacating that judgment. She also argues that her motion to vacate judgment and set aside default should have been granted under Super. Ct. Civ. R. 60(b)(6). We vacate the judgment of the trial court and remand this case for a determination as to whether the default judgment was void under Rule 60(b)(4) because of a due process violation.

## FACTUAL SUMMARY

The record before us shows that on June 1, 1992, Ms. Hudson, then an Assistant United States Attorney in Knoxville, Tennessee, retained the law firm of Kator, Scott & Heller "to represent [her] in connection with [her] claim of sex discrimination, retaliation and Privacy Act [violations] against [her] employer, the United States Department of Justice." Mr. Shapiro apparently was the main attorney assigned to her at the firm. Subsequent to the execution of the retainer agreement, Mr. Shapiro left the firm. At that time, the law firm indicated that Ms. Hudson owed $17,643.80 in legal fees.

No new retainer agreement was executed between Mr. Shapiro and Ms. Hudson after he left the firm, although Mr. Shapiro allegedly negotiated her "out of" the

retainer agreement with Kator, Scott & Heller. Mr. Shapiro continued to represent Ms. Hudson in the United States District Court for the Eastern District of Tennessee, and eventually obtained a judgment in her behalf in the amount of $536,396.15, as well as interest, and attorney's fees totaling $430,752.28.

Subsequent to the federal court award, a dispute arose as to how much Mr. Shapiro and his former law firm were entitled to in attorneys' fees. On December 11, 1998, Kator, Scott & Parks, allegedly a successor firm to Kator & Scott which was the successor to Kator, Scott & Heller, filed a complaint in the trial court against Ms. Hudson, seeking the sum of $23,641.82 as monies due and owing on the retainer agreement that Ms. Hudson signed with Kator, Scott & Heller. Ms. Hudson in turn filed a motion to dismiss on April 7, 1999, which was denied based on the filing of proof of service. Ms. Hudson lodged an answer to the complaint on July 1, 1999, and a third-party complaint against Mr. Shapiro seeking indemnity and contribution from him with respect to any sum the court might find that she owed to Kator, Scott & Parks. Mr. Shapiro filed an answer, and a counterclaim against her on July 30, 1999, which she answered on August 27, 1999.

Mediation was scheduled on three different occasions—April 17, 2000, June 21, 2000, and August 14, 2000. Neither Ms. Hudson nor her counsel appeared for these mediation sessions. On August 14, 2000, the court apparently entered a default against Ms. Hudson concerning Mr. Shapiro's counterclaim against her, although there is no docket entry to that effect. An ex parte proof hearing took place on October 13, 2000. On October 23, 2000, the trial court entered a default judgment against Ms. Hudson and in favor of Mr. Shapiro with respect to their claims against each other. Judgment was in the amount of $134,099.04. The docket sheet does not indicate that any written notice of the application for judgment was served on Ms. Hudson.

Years later, on August 18, 2003, Ms. Hudson filed a motion to vacate judgment and set aside default, after Mr. Shapiro contacted her around June 2003, to request payment on the default judgment. She maintained that "the required procedures for noting [the] default and taking a default judgment were not followed;" that she "never received notice of the ex parte hearing on damages which preceded the judgment, as [the] notice was not properly addressed;" and that she "was unaware that the Court had entered judgment against her until late May or early June 2003, when ... [Mr.] Shapiro ... contacted her in an effort to collect upon the judgment." She specifically invoked Super. Ct. Civ. R. 55(b). Ms. Hudson's motion was opposed by Mr. Shapiro, primarily on the ground that she had failed to attend three scheduled mediation sessions in the case. He maintained that the trial court "correctly entered a default *sua sponte* against [Ms.] Hudson for her inexcusable and deliberate failure to appear for the third time at a scheduled mediation," and cited Super. Ct. Civ. R. 16(I)(sic) [1] and Rule 37(b)(2). He also argued that the trial court "correctly entered final judgment on the default against [Ms.] Hudson based on evidence provided by [him] in a

---

1. Mr. Shapiro undoubtedly meant to cite Super. Ct. Civ. R. 60–I, but that rule was abrogated in 1985, and Rule 16–II provides that:

   If counsel or a party proceeding pro se fails to appear at a pretrial settlement, or status conference, the Court may enter a default, a dismissal of the case without prejudice, or take such other action, including the imposition of penalties and sanctions, as may be deemed appropriate.

duly noticed ex parte hearing," citing Rules 55(b)(2) and 55(d); he claimed that Ms. Hudson was not entitled to relief under Rule 60(b)(4) or (6). In her opposition to Mr. Shapiro's response, Ms. Hudson maintained that "two of the mediation dates had been continued by mutual agreement," and that in addition to her reliance on Super. Ct. Civ. R. 60(b)(6), "her motion was properly filed ... under Rule 60(b)(4)."

The trial court heard the parties on the motion on October 17, 2003. The trial court at the outset of the hearing asked counsel for Ms. Hudson, "[i]sn't there an obligation upon counsel to check on the status of a case?" Counsel for Ms. Hudson explained that the notice of the *ex parte* hearing on damages that was sent to the attorney in Tennessee who represented Ms. Hudson at that time was not effective because "the zip code and the substance of the message got merged" when the notice was generated by the computer. The trial court asked whether counsel was "suggesting that ... without a zip code it couldn't have been delivered;" counsel replied, in part, "[it] could have, but it might not have ... and [the former attorney] did not actually receive it and I believe that he did not receive it because there was an issue with the way that the notice was addressed." The trial court noted that there was no indication in the court jacket for the case that the notice had been returned. Ms. Hudson further stated that the trial court had not considered lesser sanctions, and apparently did not do so because it believed that she had failed to attend three mediation sessions when, in fact, the parties agreed to continue two of the sessions. In its analysis of the situation, the trial court focused on the date on which the motion to vacate judgment and set aside default had been filed:

It has been three years—almost three years since this judgment has been en-

tered and counsel has an obligation until it has been relieved by a court order to maintain knowledge of what the condition of the case is.

In addition, the trial court suggested that since former counsel had not attended the required mediation in the case on three different occasions, he had a "responsibility under the canon of ethics" "to find out what happened after the mediation." Although the trial court did not issue a written memorandum and order, the judge stated at the conclusion of the hearing:

The court believes and the law indicates that counsel have a continuing duty to understand what's happening with their case.

The motion to vacate the judgment in this Court's view is not timely filed. The motion to vacate is denied.

During the hearing there was no discussion of the Superior Court Civil Rules cited by the parties. Subsequently, the trial judge made an entry on the case jacket that "motion to vacate judgment and set aside default is denied." Ms. Hudson filed a timely appeal.

## ANALYSIS

■ Ms. Hudson's primary argument on appeal is that the default judgment entered against her and in favor of Mr. Shapiro was void under Super. Ct. Civ. R. 60(b)(4) because of procedural defects; that is, the trial "court's own procedures for entry of default and judgment [were] not followed[,]" and her counsel at the time submitted an affidavit "attesting that he had never received the notice of *ex parte* hearing." She asserts, also, that "it does not appear that any default was ever entered on the docket," as required by Super. Ct. Civ. R. 55, and the record does not show that Mr. Shapiro made a motion or application for judgment and served it on

her as required by the same rule. Moreover, she faults the trial court for failing to hold an evidentiary hearing as to whether the default judgment was void. She also contends that the judgment should have been vacated under Super. Ct. Civ. R. 60(b)(6), but that the trial court did not consider the Rule 60(b)(6) ground. And, she asserts that "in deciding that [her] motion [to vacate default judgment] was not timely filed the [trial] court [ ] abused its discretion," in part because Mr. Shapiro did not seek payment from her on the default judgment until around June 2003, and that was when she first learned about the default judgment.

Mr. Shapiro maintains that the default judgment was not void because Ms. Hudson "had actual notice of all three mediation hearings, including the third mediation at which the default was [properly] entered [by the trial court]," and the trial court had jurisdiction to enter default judgment. As proof that the notice was mailed to all parties, Mr. Shapiro directs this court to page 38 of his appendix, but what apparently is unnumbered page 38 of his appendix contains only a copy of a letter from his counsel to another counsel (with a copy to Ms. Hudson) relating to a "mediation for late July or early August," with no mention of default. He argues that Ms. Hudson and her counsel "breached their duty to stay informed of the case ..., starting in August 2000," and that the trial court properly "entered the default *sua sponte* under Rule 16(I)(sic) when [Ms.] Hudson and counsel failed (for the third time) to appear on August 14, 2000." Moreover, he asserts, no evidentiary hearing regarding the notice of the ex parte hearing was required.

We are not persuaded by Mr. Shapiro's argument that Rule [16–II] controls our analysis of this case.[2] The trial court did more than dismiss a complaint as a sanction for violation of Rule 16–II. In fact, the court entered a monetary judgment of $134,099.04 in favor of Mr. Shapiro. The judgment, in essence, was a default judgment entered under Rule 55(b)(2), even though it is styled as "Judgment" and does not mention default. Although Rule 16–II deals generally with dismissals of complaints or entry of default, *see Durham v. District of Columbia*, 494 A.2d 1346 (D.C. 1985), *see also Digital Broad. Corp. v. Rosenman & Colin*, 847 A.2d 384 (D.C. 2004), it does not mention default judgments, which are treated expressly by Rule 55(b). In particular, Rule 55(b)(2) permits a party "entitled to judgment by default ... [to] apply by motion to the Court therefore," provided that if the party against whom the judgment is sought has appeared in the action-as Ms. Hudson did here-that party has "been served with written notice of the application" at least three days before the hearing. Further, Rule 60(b) provides for "relie[f] from a final judgment, order or proceeding." This case comes to us in a strange posture because no entry of default appears on the docket sheet, and no default application appears in the record, but a judgment order has been entered and is part of the record. Consequently, we believe the appropriate rules to apply in this case are Rule 60(b) and Rule 55(b).

---

**2.** Nor does Rule 55(a), or Rule 55(c) control our analysis. Rule 55(a) concerns the entry of default by the Clerk of the Court "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" the action against him or her. Rule 55(c) governs setting aside default "[f]or good cause shown, and upon the filing of an answer setting up a defense sufficient if proved to bar the claim in whole or in part." Here, Ms. Hudson not only had filed an answer to the lawsuit against her, but had initiated her own third-party action and answered the counterclaim against her in that action.

■ Ms. Hudson filed her motion to vacate default judgment under Super. Ct. Civ. R. 60(b)(4) and (6). In *Jones v. Hersh,* 845 A.2d 541 (D.C.2004), we clarified our standard of review concerning the denial of a motion under Rule 60(b). We said that "[t]he decision whether to relieve a party from a final judgment pursuant to Rule 60(b) is committed in most instances to the sound discretion of the trial court, and appellate review is deferential and limited." *Id.* at 544–45. However, there is a notable exception. "[T]he trial court has no discretion when relief is sought pursuant to subdivision (4) of Rule 60(b) on the ground that the judgment is void." *Id.* at 545. "Whether a judgment is void is a question of law (though like all legal questions it may depend on the court's resolution of issues of fact), and if a judgment is void, it must be vacated." *Threatt v. Winston,* 907 A.2d 780, 785 (D.C.2006) (quoting *Jones, supra,* 845 A.2d at 544) (internal quotation marks omitted). "Rule 60(b) places no time limit on an attack upon a void judgment, nor can such a judgment acquire validity because of laches on the part of him [or her] who applies for relief from it." *Id.* (citation and internal quotation marks omitted). Nor is there any requirement of a "meritorious claim or defense or other equities" with respect to the maker of the motion. *Jones, supra,* 845 A.2d at 544–45. But, under Rule 60(b)(4), "[a] judgment must be *void,* not merely *voidable;* a judgment is not void merely because it is erroneous." *Id.* (emphasis in original) (citation omitted). "Rather, ... it must be determined that the rendering court was powerless to enter it." *Id.* (citation omitted). Thus, "[t]ypically, ... 'a judgment may be held void only if the court that entered it had no jurisdiction over the parties or the subject matter ..., or if the court's action was otherwise so arbitrary as to violate due process of law....'" *Id.* at 545–46 (quoting *Kam-*

*merman v. Kammerman,* 543 A.2d 794, 799 (D.C.1988)). A void judgment is regarded as a "legal nullity." *Id.* at 545 (citing *Combs v. Nick Garin Trucking,* 263 U.S.App.D.C. 300, 304–05, 825 F.2d 437, 441–42 (1987)) (other citation omitted).

Our past cases involving a motion to vacate default judgment under Rule 60(b)(4) generally concern defective or invalid service of process. *See Threatt, supra,* 907 A.2d at 784, and the cases cited. Nevertheless, other types of due process concerns may result in a void judgment, as JAMES W. MOORE'S FEDERAL PRACTICE (3d ed. 2006), treatise explains:

It has been repeatedly stated that "a judgment is void for purposes of Rule 60(b)(4) ... if the judgment was entered in violation of due process." In fact, most of these cases are cases dealing with failure to serve a defendant with process or give adequate notice to class members, so that the reference to lack of due process does not mean anything more than the lack of personal jurisdiction....

There are, however, forms of denial of due process other than lack of personal jurisdiction. For example, if a prisoner brings a habeas corpus petition, there is no question that the court has personal jurisdiction over the prisoner. If the court proceeds to hear the habeas corpus petition and finds facts without notice to the prisoner sufficient to permit any meaningful participation by the prisoner, the resulting judgment on the petition may be void and may be set aside under Rule 60(b)(4). There is no theoretical limit to the possibilities that a judgment could be void because a court with jurisdiction over the subject matter and jurisdiction over the parties nonetheless "has acted in a manner inconsistent with due process of law."

*Id.* at § 60.44[4], at 60–148–149 (footnotes omitted).

Here, since the trial court clearly had jurisdiction over the parties, the issue to be addressed is whether the court's action in entering the default judgment was "so arbitrary as to violate due process," and hence that judgment should have been vacated under Rule 60(b)(4). While we have held that a default judgment is void where service of process has not been effective, *see Miranda v. Contreras*, 754 A.2d 277, 281 (D.C.2000), we have never determined whether a default judgment is void because of a violation of due process due to (1) the lack of notice of an *ex parte* hearing or a hearing notice that was defective because it contained a computer-generated merger of the substance of the notice with the zip code and where counsel for the defaulting party presented a declaration indicating that he did not receive the notice; and (2) the trial court's failure to follow its own procedures, set forth in Super. Ct. Civ. R. 55(b)(2), regarding the application for a default judgment.

■ Here, it is possible that the default judgment was void because of a violation of due process resulting from the failure to provide the requisite written notice of application for a default judgment under Super. Ct. Civ. R. 55, and perhaps because of a failure to provide actual notice to Ms. Hudson concerning the *ex parte* damages hearing. The trial court made no express findings on the due process issue, for example, on whether Ms. Hudson's counsel in fact was sent and received notice of the *ex parte* hearing on damages, and whether the requisite notice of application for a

default judgment was given. Nor does the docket sheet in this case contain any entry that a written notice of the application for judgment was served on Ms. Hudson, or show that default was entered against her. The trial court may have disbelieved the assertion that Ms. Hudson did not receive notice of the *ex parte* hearing on damages, but there is no credibility determination on the record. Essentially, the trial court declined to vacate the default judgment under Rule 60(b)(4) because Ms. Hudson's motion was filed some three years after the entry of judgment and counsel for Ms. Hudson had a "responsibility under the canon of ethics" "to find out what happened [in this case] after mediation."[3] Simply put, the trial court denied the motion to vacate default judgment because Ms. Hudson waited too long to file it. But as Professor Moore stated in his treatise:

> Despite the express language of [ ] Rule [60(b)], there is no real time limit of any kind on a motion for relief from a void judgment. A motion under Rule 60(b)(4) challenging a judgment as void is subject neither to the "reasonable" time requirement of Rule 60(b) nor subject to the equitable doctrine of laches, but rather may be made at any time.

MOORE, § 60.44[5][c], at 60–152 (footnote omitted). And, counsel for Mr. Shapiro did not contact Ms. Hudson to collect on the 2000 default judgment until June 2003. Moreover, under Rule 60(b)(4), Ms. Hudson did not have to present evidence of a meritorious defense to the trial court. As we said in *W.H.H. Trice & Co., v. Faris*, 829 A.2d 189 (D.C.2003), "[u]nlike with other motions to vacate default judgments,

---

3. The trial court also declared:

I guess I'm still troubled by the fact that it took almost three years, maybe two-and-a-half since the motion was filed in August for anybody, either the defendant herself or counsel, to have checked the record and

that's what concerns me the most; that had there been a reasonable diligence on either party to find out what the status of the case was, that it would have been easily ascertainable by checking the court file to determine that a default had been entered.

... [a] prima facie showing of a meritorious defense is not required when the ground of the motion is that the judgment is void." *Id.* at 194 (citation and internal quotation marks omitted); *see also Jones, supra,* 845 A.2d at 544. Consequently, this case must be remanded and, on remand, the trial court must make appropriate factual findings and decide whether the default judgment must be vacated under Rule 60(b)(4). We are uncertain whether the record in this case is sufficient to resolve the matter on remand without an evidentiary hearing, and we leave it to the trial court to determine whether a hearing is necessary.

■ Ms. Hudson also filed her motion under Super. Ct. Civ. R. 60(b)(6), and contends on appeal, for different reasons, that the trial court should have vacated the default judgment under Super. Ct. Civ. R. 60(b)(6). The trial court did not consider this ground. Rule 60(b)(6) specifies that "the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... any other reason justifying relief from the operation of the judgment." Ms. Hudson maintains that her trial counsel's "failure to keep informed about the case or to formally move to withdraw (thus putting [her] on notice that he was no longer actively participating in the litigation) was inexcusable neglect and that [she] was lulled into inaction because of her reliance on counsel, such that a three year delay was not unreasonable." She further asserts that there was a dispute as to whether two of the mediation sessions were continued by consent, in which case there would have been no basis for granting the default because she missed three mediation sessions. And, she argues that (1) her "claim against

[Mr.] Shapiro was a contingent third-party claim [and] she would only have called upon him to reimburse her if she were found to be liable to [Kator, Scott & Parks] for the monies the firm claimed;" (2) that "[Mr.] Shapiro had told her that he would not pursue the counterclaim [against her] if she dismissed her claim against him;" and (3) "since [Kator, Scott & Parks] was actually no longer pursuing the claim against [her], she was no longer pursuing the claim against [Mr.] Shapiro." [4] In this context, she claims, had the trial court allowed her to present proof of Mr. Shapiro's assurance, "it would have become all the more apparent that the lack of any inquiry into the status of the case was not at all unreasonable." She also points to the policy favoring decision on the merits of the litigation.

Mr. Shapiro argues that "[e]ven if [Ms.] Hudson's [m]otion *arguendo* had fallen under Rule 60(b)(6), it was untimely." He also contends that her motion should be treated as a Rule 60(b)(1) motion because "the true basis of [her] Rule 60(b) motion was to excuse her and her counsel's neglect of the pending lawsuit for 34 months." He claims that Ms. Hudson has not satisfied the factors used to determine whether a motion to vacate default judgment should have been granted. In that regard, he states, she had actual notice of the third mediation session at which the trial court entered default; failed to act in good faith during the litigation; had no meritorious defense because she simply claimed "that she and her counsel moved 'expeditiously' upon learning of the default judgment;" "breached their duty to stay informed of the case" and "acted 'promptly' only after Mr. Shapiro contacted [Ms.] Hudson to obtain payment of the outstand-

4. She notes that Kator, Scott & Parks' "claim actually was dismissed by the trial court at the ex parte hearing."

ing judgment in June 2003;" that he will be prejudiced if has to bear the expense of "re-litigating the same issues," and "[t]here is a 'strong policy favoring the finality of judgments.'"

■ We said in *Miranda, supra,* that "Rule 60(b)(6) is properly invoked in extraordinary circumstances or where a judgment may work an extreme and undue hardship, but is not narrowly defined." 754 A.2d at 280 (citing *Starling v. Jephunneh Lawrence & Assocs.,* 495 A.2d 1157, 1161 (D.C.1985)) (internal quotation marks omitted). "In the typical 'extraordinary' case, ... there just is no way the party seeking to set aside the judgment could have discovered the ground for doing so within a year of its entry." *Lowe v. McGraw–Hill Cos.,* 361 F.3d 335, 342 (7th Cir.2004) (citations omitted). Professor Moore's treatise states: "In a vast majority of the cases finding that extraordinary circumstances do exist so as to justify relief, the movant is completely without fault for his or her predicament; that is, the movant was almost unable to have taken any steps that would have resulted in preventing the judgment from which relief is sought." MOORE, *supra,* § 60.48[3][b], at 60–171; *see also Tennille v. Tennille,* 791 A.2d 79, 83 (D.C.2002) ("a necessary prerequisite to relief under Rule 60(b)(6) is that 'circumstances beyond the [moving party's] control prevented timely action to protect its interests'") (quoting *Cox v. Cox,* 707 A.2d 1297, 1299 (D.C.1998)). Furthermore, the Supreme Court has noted that Rule 60(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE (our rules generally mirror the federal rules) may not be used to escape the one-year time limitation of Rule 60(b)(1) relating to "mistake, inadvertence, surprise, or excusable neglect," and that Rule 60(b)(1) and 60(b)(6) are mutually exclusive. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S.

380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (citations omitted). Thus, "[a] party who failed to take timely action due to excusable neglect may not seek relief more than a year after the judgment by resorting to subsection (6)." *Lowe, supra,* 361 F.3d at 342 (citing *Pioneer Inv. Servs. Co., supra,* 507 U.S. at 393, 113 S.Ct. 1489) (other citations and internal quotation marks omitted). Or as Professor Moore's treatise explains, subsection 6 "applies only when there are reasons for relief other than those set out in the more specific clauses of Rule 60(b)." MOORE, *supra,* § 60.48[1], 60–167.

Here, the reasons Ms. Hudson articulates for relief under Rule 60(b)(6) all appear to fall under Rule 60(b)(1). For example, her complaints about her counsel's failure to keep informed about her case, which she describes as "inexcusable neglect," is simply a negative variant of "excusable neglect," and her argument about the continuance of two of the mediation sessions (as opposed to her unexplained absence) probably would be covered within the category of "mistake." Consequently, Ms. Hudson may not proceed under Rule 60(b)(6) because the one-year limit expired long before she filed her motion to vacate default judgment. Nor can we say that Ms. Hudson could not have discovered the grounds she now relies on for Rule 60(b)(6) relief within a year of the entry of default judgment. *Lowe, supra,* 361 F.3d at 342.

Accordingly, for the foregoing reasons, we vacate the judgment of the trial court and remand this matter for a determination as to whether the default judgment was void under Rule 60(b)(4) because of a due process violation.

*So ordered.*