*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 16-CV-1220 & 16-CV-1278

HVAC SPECIALIST, INC., APPELLANT/CROSS-APPELLEE

V.

DOMINION MECHANICAL CONTRACTORS, INC., APPELLEE/CROSS-APPELLANT.

Appeals from the Superior Court
of the District of Columbia
(CAB-9870-15)

(Hon. Jeanette Jackson Clark, Trial Judge)

(Argued February 21, 2018                    Decided February 28, 2019)

*Nancy D. Greene* for appellant/cross-appellee.

*Stephanie M. Rochel*, admitted *pro hac vice*, for appellee/cross-appellant. *Richard Mann* and *Hanna L. Blake* were on the brief.

Before THOMPSON and BECKWITH, *Associate Judges*, and WASHINGTON, *Senior Judge*.

THOMPSON, *Associate Judge*:   These consolidated appeals are from Superior Court orders that dismissed claims and counterclaims brought by appellant/cross-appellee HVAC Specialist, Inc. ("HVAC") and appellee/cross-appellant Dominion Mechanical Contractors, Inc. ("Dominion").  All of the claims and counterclaims

relate to the renovation of the Takoma Elementary School in the District of Columbia, a project for which HVAC was a heating, ventilation, and air conditioning subcontractor to Dominion. In a March 11, 2016, order (the "March 11 order"), the Superior Court dismissed HVAC's claim against Dominion for indemnification or contribution. Subsequently, through a November 17, 2016, order (the "November 17 dismissal order"), the court dismissed all of the remaining claims and counterclaims on the ground that the subcontract was illegal, and therefore void, because, at all relevant times, HVAC lacked the relevant license to do business in the District of Columbia as a refrigeration and air conditioning contractor. We affirm the judgment of the Superior Court.

## I.

The subcontract, dated August 2, 2011, required HVAC to "perform a portion of the heating, ventilation and air conditioning work" on the project. Specifically, HVAC was to furnish and install refrigeration piping, to receive and install heating, ventilation, and air conditioning equipment, to charge the equipment with gas, and to assist with the startup of equipment at the elementary school. HVAC ran into difficulties paying its employees and suppliers, and Dominion eventually terminated the subcontract for HVAC's alleged default.

There followed the parties' claims and counterclaims for breach of contract and related causes of action. HVAC, a Virginia corporation, filed its initial complaint in December 2012, while it was an unregistered "foreign filing entity or foreign limited liability partnership doing business in the District," a status that precluded it from "maintain[ing] an action in the District." D.C. Code § 29-105.02 (b) (2011). Dominion moved for dismissal of HVAC's complaint on that basis, and the Superior Court dismissed the original complaint without prejudice. HVAC filed its new complaint on December 22, 2015. Dominion initially responded by filing a motion to dismiss, arguing that the court should dismiss the action for lack of subject matter jurisdiction and should additionally dismiss some of the counts for failure to state a claim. On March 11, 2016, the trial court granted Dominion's motion as to Count III of HVAC's complaint, a claim for indemnification or contribution.[1]

Thereafter, on March 25, 2016, Dominion filed its answer to the December 22, 2015, complaint, asserting counterclaims of breach of contract and termination for default. Dominion asserted a number of affirmative defenses in its answer, but

---

[1] The court reasoned that HVAC's prayer for those "equitable remedies" could not succeed because those remedies "apportion damages among [joint] tortfeasors," and HVAC and Dominion "are not joint tortfeasors."

did not assert illegality of the contract as a defense.[2] On August 8, 2016, however, Dominion filed another motion to dismiss, wherein it alleged that HVAC could not recover under the subcontract or under "a *quantum meruit* or quasi-contractual basis" because HVAC "had no license" when it entered into the subcontract and performed work under it. In particular, Dominion asserted that, at all relevant times, HVAC lacked the refrigeration and air conditioning contractor's license it was required to have under District of Columbia law to perform work under the subcontract. Opposing Dominion's motion to dismiss, HVAC argued that Dominion waived any illegality defense by failing to assert it in the prior case, and for nearly 8 months after HVAC refiled its complaint, despite knowledge of HVAC's licensure status. To the extent Dominion did not waive the asserted illegality defense, HVAC further argued, Dominion was "estopped" from raising the defense after having filed a counterclaim for damages for breach of the allegedly void contract.

In ruling on Dominion's motion to dismiss, the Superior Court noted that "[b]y its own admission," HVAC "'had no license to do business in the District of

---

[2] Dominion represents that it became aware of HVAC's expired licenses only in July 2016, months after it filed its answer and asserted its affirmative defenses and counterclaims. HVAC asserts that Dominion was aware no later than October 2013 that HVAC was unlicensed.

Columbia when it entered into the [s]ubcontract.'" The court explained that it was "constrained to grant" Dominion's motion "inasmuch as the statutes and regulations requiring licenses for businesses operating in the District of Columbia are very clear that businesses performing refrigeration or air conditioning work must have a license to do so and there are no exceptions." Relying primarily on this court's opinion in *Sturdza v. United Arab Emirates*, 11 A.3d 251, 257 (D.C. 2011), the court concluded that HVAC "could not recover in contract or in *quantum mer[ui]t* for services rendered." Citing this court's opinion in *Billes v. Bailey*, 555 A.2d 460, 463 (D.C. 1989), the court reasoned that even though Dominion "was aware that [HVAC] had no District of Columbia license at the time they entered into [the] [s]ubcontract," "the doctrine of unclean hands does not entitle [HVAC] to recover in the instant action." Although recognizing that Dominion "belatedly filed [its] Motion to Dismiss based on [HVAC's] failure to have the required District of Columbia licenses," the court did not specifically address HVAC's argument that Dominion waived or was estopped from asserting the defense of illegality. The court dismissed Dominion's counterclaims because they were "based on a void contract."[3] These consolidated appeals followed.

---

[3] The court also reasoned — erroneously, Dominion argues, that Dominion "acknowledged in its [a]nswer that the statute of limitations bar[red] [Dominion's assertion of] claims related to th[e] case."

**II.**

We focus on the November 17 dismissal order because our conclusion regarding the subcontract's unenforceability is dispositive of all of HVAC's claims, including those dismissed through the March 11 order.[4]  Our review of the

---

[4]    HVAC argues that the Superior Court erred in dismissing its Count III claim for indemnification or contribution through the March 11 order.  The Superior Court stated that the indemnification or contribution claim "d[id] not appear to arise out of a contract between the parties."  Disagreeing with the Superior Court on that point, we uphold the dismissal of Count III on the ground that the basis for Count III is what the complaint refers to as "the Payroll Agreement" between the parties — i.e., "an additional verbal agreement whereby Dominion would advance HVAC funds to meet its payroll and supplier obligations until regular billings and collections started for work performed on the Project." Like the parties' written subcontract, the alleged verbal contractual indemnification agreement arose out of HVAC's "engag[ing] . . . in the business of installing, maintaining, repairing, or replacing refrigeration and air conditioning equipment." [A322; see 17 DCMR § 303.1 (2011)]  As explained in the text *infra*, HVAC was required to have a refrigeration and air conditioning contractor license to engage in that business.  We conclude that any agreement by Dominion to indemnify HVAC for its project payroll expenses, or to contribute to those expenses, is as unenforceable as the written subcontract. *See Contemporary Mission, Inc. v. Bonded Mailings, Inc.*, 671 F.2d 81, 83 (2d Cir. 1982) (citing authority that even if a contract is not itself unlawful, "the bargain may still be illegal if it is closely connected with an unlawful act").  Further, the fact of HVAC's non-licensed status, which was not known to the Superior Court when it declined to dismiss HVAC's indemnity/contribution claim as set out in the original complaint, was new information that undermines HVAC's argument that the viability of the indemnity/contribution claim is the binding "law of the case." *See Kritsidimas v. Sheskin*, 411 A.2d 370, 372-73 (D.C. 1980) (explaining that the "law of the case"

(continued…)

November 17 dismissal order is *de novo*. *See Williams v. District of Columbia*, 9 A.3d 484, 488 (D.C. 2010).

The various District of Columbia Code provisions and regulations cited in the November 17 dismissal order require licensure with respect to the refrigeration and air conditioning "occupation[] or profession[]," because it is one that has "been determined to require regulation in order to protect public health, safety or welfare, or to assure the public that persons engaged in such occupations or professions have the specialized skills or training required to perform the services offered."

---

(…continued)
does not control "where the first ruling is clearly erroneous in light of newly-presented facts").

HVAC additionally contends that dismissal of Count III was error because HVAC and Dominion are "joint tortfeasor[s] as a matter of law" pursuant to 26 U.S.C. § 3505 (b) (establishing tax liability of a person who "supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer" with knowledge that the employer will not be able to make timely payment of associated withholding taxes). For the reasons set forth in Dominion's brief at pages 39-45, we find that argument to be without merit. We note in particular that "[a] prerequisite to an equitable indemnity claim is that the party seeking it . . . have discharged the liability for the party against whom it is sought . . . ." *District of Columbia v. Washington Hosp. Ctr.*, 722 A.2d 332, 341 (D.C. 1998). HVAC has neither alleged nor furnished evidence showing that it has paid any taxes that were Dominion's responsibility to pay.

D.C. Code § 47-2853.04 (a) (2011); D.C. Code § 47-2853.04 (a)(29) (2011).[5] Further, "[t]he rule is well-established in the District of Columbia that a contract made in violation of a licensing statute that is designed to protect the public will usually be considered void and unenforceable, and that the party violating the statute cannot collect monies due on a quasi-contractual basis either." *Sturdza*, 11 A.3d at 257 (internal quotation marks and brackets omitted); *see also id.* at 256 n.19 (declining to create an exception for commercial transactions or an exception based on the sophistication of the parties); *Saul v. Rowan Heating & Air Conditioning, Inc.*, 623 A.2d 619, 621 (D.C. 1993) ("This jurisdiction has held consistently that a contract entered in violation of a licensing statute or regulation directed at protecting the public is void and unenforceable."). "Although the operation of this rule may appear to be harsh and disproportionate in some cases, we have uniformly rejected appeals to deviate from or mitigate it; the potential

---

[5] The Superior Court also cited *inter alia* D.C. Code § 47-2853.02 (a) (2011) ("No person shall practice, attempt to practice, or offer to practice an occupation or profession for which a license, certification, or registration is required under this subchapter without a current valid license, certificate, or registration in accordance with the requirements of this subchapter."); 17 DCMR § 303.1 (2011) ("Except as specifically provided otherwise in this section, no person shall engage in or be employed in the business of installing, maintaining, repairing, or replacing refrigeration and air conditioning equipment, within the limits set forth in § 301, without being licensed to do so."); and 17 DCMR § 315.1 (2011) ("No person shall perform work without having been issued the license under which that work may be performed. The license must be currently valid and in full force and effect.").

unfair applications of the rule at the margins have not persuaded us to sacrifice the benefits of a clear-cut, unmistakable requirement, with equally clear consequences for noncompliance." *Sturdza*, 11 A.3d at 257 (internal quotation marks omitted).

That the party asserting illegality was familiar with the licensing rules and knew of the contractor's unlicensed status does not prevent operation of the foregoing rule. *See Billes*, 555 A.2d at 462 ("[T]he doctrines of *in pari delicto* and unclean hands do not entitle an unlicensed . . . contractor to recover in a suit for an unpaid balance under a contract that is void," because courts "must pay deference to the legislature's intentional exposure of unlicensed contractors, which discourages unlicensed work[.]").

HVAC, which acknowledges that at all relevant times it lacked a refrigeration and air conditioning contractor's license, does not contest the general applicability of any of the foregoing. Instead, as its primary argument on appeal, HVAC renews its argument that Dominion either waived the affirmative defense of illegality when it failed to timely assert HVAC's non-licensed status, or is estopped from asserting the defense because of its reliance on the assertedly illegal contract to pursue a claim against HVAC for damages for breach of the contract.

HVAC is correct that, as a general rule, a defendant's "[f]ailure to raise affirmative defenses [in its answer] constitutes a waiver of those defenses." *Grp. Health Ass'n, Inc. v. Reyes*, 672 A.2d 74, 75 (D.C. 1996) (internal quotation marks omitted); *see also* D.C. Super. Ct. Civ. R. 8 (c)(1) (2016) ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense," including "illegality."). This court has, however, allowed "exception[s] to th[e] waiver rule" where there is no prejudice to the non-moving party. *See Group Health Ass'n,* 672 A.2d at 75-76. Prejudice will not be found where the non-moving party "has had an adequate opportunity to respond" to the challenge. *United States v. Krieger*, 773 F. Supp. 580, 583 (S.D.N.Y 1991) (citing *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 856 (5th Cir. 1983)). Moreover, "it is not absolutely necessary to plead the illegality of a contract which is also contrary to public policy," and indeed a "court may, *sua sponte,* step in and deny the right to any relief under an agreement without reference to the state of the pleadings, whenever it becomes apparent that the agreement is antagonistic to the interests of the public." *Krieger*, 773 F. Supp. at 583 (internal quotation marks and brackets omitted) (considering defendant's illegality defense even though its was raised five years after the filing of the complaint).

HVAC asserts that both it and the court system were prejudiced by Dominion's belated assertion of the affirmative defense of illegality after nearly four years of litigation.[6] Whether or not that is so, we conclude that under the public policy exception to the waiver rule, which is precedential law in our jurisdiction, the affirmative defense of illegality is not waivable in the context of a contract entered into in contravention of a District of Columbia law, such as a licensing requirement, that is "designed to protect the public," *Sturdza*, 11 A.3d at 257, and that "affords significant protections to the public." *Saul*, 623 A.2d at 622. The United States Court of Appeals for the District of Columbia Circuit established long ago that "[t]he invalidity of [a] contract may not be waived 'by any system of pleading, or even by the express stipulation of the parties.'" *Noonan v. Gilbert*, 68 F.2d 775, 776 (D.C. Cir. 1934) (quoting *Oscanyan v. Arms Co.*, 103 U.S. 261, 267 (1881) ("[T]he law will not lend its support to a claim founded upon

---

[6] HVAC asserts, for example, that "[h]ad Dominion timely raised [the illegality] defense in the [o]riginal [c]ase, HVAC may have been able to assert a fraud claim based on Dominion's representations that HVAC did not have to hold a separate license to perform the contract." But the record discloses that HVAC, which previously held a Refrigeration and Air Conditioning Contractor license and employed an individual with a Master Mechanic license, was aware of the licensing laws and of potential problems with its licensure status and makes it doubtful that HVAC could reasonably have relied on any such representation by Dominion. An email dated August 15, 2011, from Denise Brewer to Omar Brewer (co-owners of HVAC) recognizes that HVAC "is not compliant as we discussed a couple days ago, . . . . I am not willing to accept the possible liability for operating any new work without compliance."

its violation." (internal quotation marks omitted))). For the same reason, we conclude that Dominion's counterclaim for breach of the subcontract did not estop it from asserting as an affirmative defense HVAC's violation of the refrigeration and air conditioning contractor licensing laws. *Cf. Journal of Commerce, Inc. v. United States Dep't of Treasury*, No. 86-1075, 1988 U.S. Dist. LEXIS 17610, at *19 (D.D.C. Mar. 30, 1988) (rejecting plaintiff's estoppel argument because estopping the defendant from repudiating the agreement set out in certain memoranda of understanding would "require th[e] [c]ourt to breathe life into an illegal bargain[]").

HVAC makes three additional arguments in support of its breach of contract claim. First, it argues that it was not actually required to have a license because its employees could work under Dominion's license. It is true that under 17 DCMR § 303.2, there is no licensing requirement for "persons performing refrigeration or air conditioning work under the personal supervision of, and under the authority of a permit issued to, a validly licensed Master Refrigeration and Air Conditioning Mechanic or Master Refrigeration and Air Conditioning Mechanic Limited, who is responsible for the proper performance of the work." However, as we observed in *Saul*, "[t]he licensing regulations distinguish between those who 'engage in the business' and those who are 'employed in' or who 'perform work in' the field,"

and "[t]he exception in § 303.2 appears to be designed solely to allow *individuals* to work as subordinates to a master mechanic without obtaining a license." 623 A.2d at 621 (emphasis added); *see also id.* at 622 ("perceiv[ing] a clear distinction between [the company president's] individual license and the type of license which [the contracting company] was required to obtain before contracting or performing the work involved"). Under D.C. Code § 47-2853.04 (a)(29) and 17 DCMR § 303.6 (a), as a "corporation proposing to engage in or be employed in the business of installing, maintaining, repairing, or replacing refrigeration and air conditioning equipment," HVAC was required to have a "Refrigeration and Air Conditioning Contractor" license. *See also Saul*, 623 A.2d at 621-22 (explaining that "a 'Refrigeration and Air Conditioning Contractor' entitles the holder to engage in the business," whereas a Master Mechanic license "allow[s] the holder only to supervise or perform the type of work covered by the regulations as distinguished from engaging in the business[]"; holding therefore that even though the company president held a Master Mechanic license in his individual capacity, "this could not excuse Rowan, Inc., the contracting party, from obtaining the required license before engaging in the business[]"); *Highpoint Townhouses, Inc. v. Rapp*, 423 A.2d 932, 934 (D.C. 1980) ("The mere fact that Rapp Co. was working under a permit obtained by a master plumber does not, in itself, satisfy or excuse Rapp Co. from the licensing requirement."). In addition, as Dominion notes, D.C.

Code § 47-2851.02 (c) (2011) prohibited Dominion, as "[a] person issued a license under this subchapter," from "willfully allow[ing] any other person required to obtain a separate license to operate under [its] license."

HVAC's second argument is equally unavailing. It asserts that even if a portion of the subcontract was illegal, it should be permitted to recover with respect to the tasks performed under the contract (such as "order[ing] equipment and materials," for which it "was due an equipment acquisition fee," and providing "unspecified 'start-up assistance'") for which a license was not required. This argument is not persuasive; we fail to see how entering into and performing under a commercial contract to order heating, ventilation, and air conditioning equipment and materials and to assist with the start-up of such equipment, do not constitute engaging in the business of a refrigeration and air conditioning contractor, for which a license was required under § 47-2853.04 (a)(29) and 17 DCMR § 303.6.

In its reply brief and at oral argument, HVAC advanced the additional argument that dismissal of its complaint was premature because, with "a full opportunity to conduct discovery," it might have been able to prove that its work on the Takoma Elementary School project fell within the licensing exception established by 17 DCMR § 315.8 (2011): "No person without a license required by

this chapter may perform any air conditioning or refrigeration work in the District of Columbia *except in buildings under the control of the officer in charge of Public Buildings and Grounds or of the Architect of the Capitol*" (emphasis added). Not only does it appear that HVAC has raised this argument for the first time on appeal and not until its reply brief,[7] but HVAC joined in a consent motion that advised the Superior Court that Dominion's "pending dispositive motion m[ight] dismiss the entire case" and that a postponement of the discovery deadline and suspension of discovery would "serve to promote efficiency and judicial economy[.]" HVAC will not be heard now to complain that it needed additional discovery to counter Dominion's motion.[8]

---

[7] The court's longstanding practice is not to address arguments raised for the first time in a reply brief, *see Union Mkt. Neighbors v. District of Columbia Zoning Comm'n*, No. 17-AA-42, 2018 D.C. App. LEXIS 489, at *6 (D.C. Dec. 13, 2018), or at oral argument, *see Long v. United States*, 83 A.3d 369, 381 n.17 (D.C. 2013).

[8] And in any event, case law suggests that, as referred to in § 315.8, the phrase "officer in charge of Public Buildings and Grounds" is a reference to the Director of the National Park Service, whom Congress made responsible for the Park Police, *see Richardson v. United States*, 520 A.2d 692, 694-95 (D.C. 1987); and that the phrase "Public Buildings and Grounds" may be a reference to "federal reservations in the District's environs" that are under the jurisdiction of the Park Police, *id.* at 695, rather than to public buildings, such as elementary schools, that are under the control of the District of Columbia.

**III.**

Through its breach-of-contract counterclaim, Dominion sought judgment against HVAC "in an amount to be proved at trial, plus interest, reasonable attorneys' fees, costs, and any other relief the Court deems appropriate." Through its termination for default counterclaim, Dominion sought in addition its costs of completing HVAC's work and delay damages. Dominion asserts that "District law . . . prevents only the unlicensed contractor from recovering on a contract and does not disable the other party from a recovery." In its briefs on appeal, however, Dominion cites cases that support a more limited recovery. Dominion quotes, for example this court's statement in *Saul* that "[o]rdinarily, when a party sues successfully to rescind a contract determined to be void and unenforceable because of the contractor's violation of licensing statutes or regulations, the appropriate remedy is a return of the money paid." 623 A.2d at 622 n.4. *See also, e.g.*, *Nixon v. Hansford*, 584 A.2d 597, 598-99 (D.C. 1991) (determining that appellant was "entitled to judgment on her counterclaim" to recoup the amount paid to an unlicensed home improvement contractor even though both parties knew the law and the unlicensed status of the worker when entering into the contract). For its part, HVAC relies on the principle that neither party can enforce a void contract.

*See, e.g.*, *McMahon v. Anderson, Hibey & Blair*, 728 A.2d 656, 658 (D.C. 1999) ("[W]hen parties have entered into an illegal contract, such contract is unenforceable and, typically, we leave the parties where we find them."). HVAC also contends that Dominion's claims are time-barred.

We conclude that we need not consider the merits of Dominion's counterclaims. That is because we read Dominion's briefs in this matter as representing that it seeks only conditionally to recover from HVAC; that is, Dominion seeks a set-off in the event that this court allows HVAC's claims to proceed. See Dominion's Br. at 2 ("In the event that this Honorable Court reverses the trial court's order, Dominion's counterclaims should also be reinstated[.]"); Dominion's Br. at 48 ("[S]hould the Court somehow decide that [HVAC's] claims should be returned to the trial court, Dominion should be allowed to assert its contract claims as set-offs[.]"); Dominion's Reply Br. at 2 ("Dominion's claim should be reinstated should this Honorable Court decide to remand the case."); Dominion's Reply Br. at 3 (acknowledging that HVAC, "is defunct and in receivership"); and Dominion's Reply Br. at 5 ("Dominion requests partial reversal to reinstate its counterclaim . . . should the Court somehow conclude that [HVAC's] unlicensed status did not disable it from resort to the courts and then remand the case for further proceedings."). At oral argument as well, Dominion

represented that it is "willing to give up [the] counterclaim[s]" if HVAC's claims do not go forward. Having affirmed the dismissal of HVAC's claims, we take Dominion at its word and do not decide whether its counterclaims were improperly dismissed (the issue now being moot).

Wherefore, the judgment of the Superior Court is

*Affirmed.*