*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 23-CV-0108

KIDS HOLDINGS, INC., APPELLANT,

v.

CORDIA HINOJOSA, APPELLEE.

On Appeal from the Superior Court
of the District of Columbia
(2018-CA-005961-R(RP))

(Hon. Yvonne Williams, Trial Judge)

(Submitted October 16, 2023                    Decided March 21, 2024)

*Ian G. Thomas* and *Tracy L. Buck* were on the brief for appellant.

*Tyler Jay King* was on the brief for appellee.

Before BECKWITH AND MCLEESE,* *Associate Judges*, and THOMPSON, *Senior Judge*.

MCLEESE, *Associate Judge*: Appellant Kids Holdings, Inc. challenges an order

that (1) granted appellee Cordia Hinojosa relief from a judgment in Kids Holdings's

---

* Associate Judge AliKhan was originally assigned to this case. Following her appointment to the U.S. District Court for the District of Columbia, effective December 12, 2023, Associate Judge McLeese has been assigned to take her place on the division.

favor on the basis that Kids Holdings was not registered to do business in the District of Columbia; and (2) for that reason, quashed a writ that the Superior Court had issued to permit Kids Holdings to force the sale of real property owned by Ms. Hinojosa in order to satisfy the judgment. We vacate the order of the Superior Court and remand for further proceedings.

## I. Factual and Procedural Background

The following facts appear to be undisputed. Kids Holdings filed an action alleging that Ms. Hinojosa had defaulted under a loan to finance the purchase of a parcel of real property. The trial court entered judgment for Kids Holdings in 2019, and this court affirmed that judgment in 2022.

Kids Holdings then began collection efforts, and the Superior Court issued a writ directing that Ms. Hinojosa's property be sold to satisfy the judgment. Ms. Hinojosa filed a motion to quash the writ, which included a request that the judgment be vacated under Super. Ct. Civ. R. 60(b). In support of the latter request, Ms. Hinojosa argued that Kids Holdings was not registered to do business in the District and therefore could not maintain an action in Superior Court. *See* D.C. Code § 29-105.02 (requiring certain business entities doing business in D.C. to register with the Mayor and providing that entities that fail to register as required "may not maintain an action or proceeding in the District").

For the same reason, Ms. Hinojosa argued that the trial court should quash the writ.  Ms. Hinojosa also objected to the issuance of the writ on the merits, arguing that the real property at issue was exempt from attachment because it was her home.

Kids Holdings opposed the request that the trial court vacate the judgment, arguing that the request was untimely.  Kids Holdings also disputed Ms. Hinojosa's argument that the property at issue was exempt from attachment.

The trial court granted "full relief" from the 2019 judgment, pursuant to Rule 60(b)(6).  The trial court did not decide whether Section 29-105.02 establishes a jurisdictional prerequisite to entering a judgment.  Instead, the court concluded that the registration requirement in Section 29-105.02 is not waivable, and Ms. Hinojosa therefore was entitled to relief from the judgment even though Ms. Hinojosa had not raised Kids Holdings's lack of registration before judgment was entered.  For the same reason, the trial court granted the motion to quash the writ.  Kids Holdings moved for reconsideration of the trial court's order, and the trial court denied that motion.

## II. Analysis

## A. Timeliness of the Notice of Appeal

Ms. Hinojosa argues that the notice of appeal was untimely filed. We disagree.

The trial court issued the order granting relief from the judgment and quashing the writ on November 9, 2022. Kids Holdings filed a motion to reconsider that ruling on November 15, 2022. The trial court denied that motion on January 19, 2023. Kids Holdings noted this appeal on February 10, 2023.

Generally, a notice of appeal in a civil case must be filed within thirty days after entry of judgment. D.C. App. R. 4(a)(1). That time period is tolled, however, if the party timely files certain post-judgment motions in the Superior Court. D.C. App. R. 4(a)(4). Kids Holdings's motion to reconsider did not cite a specific court rule, but in substance it was a motion to vacate, alter, or amend the judgment under Super. Ct. Civ. R. 59(e). Such a motion is timely if filed within twenty-eight days after entry of judgment. *Id.* Kids Holdings's motion therefore was timely and operated to toll the time period within which Kids Holdings could file a notice of appeal. After the trial court denied the motion, Kids Holdings had thirty days to note

its appeal. D.C. App. R. 4(a)(4). Kids Holdings's notice of appeal therefore was timely.

## B. Subject-Matter Jurisdiction

Ms. Hinojosa argues that the registration requirement under Section 29-105.02 goes to the trial court's subject-matter jurisdiction. We hold as a matter of law that lack of registration under Section 29-105.02 does not affect the subject-matter jurisdiction of the Superior Court. *See generally*, *e.g.*, *Grayson v. AT&T Corp.*, 15 A.3d 219, 228 (D.C. 2011) (en banc) ("Whether the trial court has subject matter jurisdiction is a question of law which this court reviews *de novo*.") (internal quotation marks omitted).

"Subject matter jurisdiction concerns the court's authority to adjudicate the type of controversy presented by the case under consideration." *Davis & Assocs. v. Williams*, 892 A.2d 1144, 1148 (D.C. 2006) (internal quotation marks omitted). The Superior Court is "a court of general jurisdiction with the power to adjudicate any civil action at law or in equity involving local law." *King v. Kidd*, 640 A.2d 656, 661 (D.C. 1993) (internal quotation marks omitted). "Unless the legislature has divested the Superior Court of jurisdiction of a particular subject matter through enactment of legislation, the court has general jurisdiction . . . over common law

claims for relief." *Id.* The complaint in this case alleged a breach of contract, which falls within the subject-matter jurisdiction of the Superior Court.

As Ms. Hinojosa notes, however, Section 29-105.02 prohibits entities that have not properly registered to do business in the District from maintaining an action in the courts of the District. The question is whether that prohibition deprives the Superior Court of subject-matter jurisdiction to hear a case or instead imposes a non-jurisdictional disability on the unregistered company. We hold the latter.

"[W]e have stressed that . . . statutory restrictions on authority are generally non-jurisdictional unless the legislature clearly meant for noncompliance to have jurisdictional consequences." *Fraternal Ord. of Police/Metro. Police Dep't Lab. Comm. v. D.C. Metro. Police Dep't*, 277 A.3d 1272, 1279 (D.C. 2022) (ellipsis and internal quotation marks omitted). That approach reflects the "drastic consequences that accompany a jurisdictional label, and a belief that the legislature does not impose [those consequences] lightly." *Id.* (internal quotation marks omitted). "For example, . . . jurisdictional constraints cannot be relaxed for equitable reasons[,] [n]or can they be waived or forfeited . . . ." *Id.* (citations and internal quotation marks omitted).

This court has not previously decided whether Section 29-105.02 goes to the subject-matter jurisdiction of the Superior Court. We have, however, previously

decided a case involving a similar statute that precluded a party who had not paid certain fees or penalties from "maintain[ing] . . . any action" in the District until the fees had been paid. *York & York Constr. Co. v. Alexander*, 296 A.2d 710, 711 (D.C. 1972) (internal quotation marks omitted). This court held that that statute did not require dismissal of pending litigation or bar reinstatement of a dismissed action if the necessary fees were paid. *Id.* at 713-15. That holding implies that the court was not treating the statute at issue as jurisdictional in character, because the lack of subject-matter jurisdiction at the time of the filing of a complaint generally cannot be remedied by later developments. *See, e.g.*, *Brown v. Hines-Williams*, 2 A.3d 1077, 1080 (D.C. 2010) ("Whether a court acquires subject-matter jurisdiction over a case depends on the facts relevant to such jurisdiction as of the time the court's jurisdiction is invoked, *e.g.*, the date on which a suit is filed."); *cf. Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought."; change of citizenship of party after action was filed did not remedy lack of diversity at time action was filed) (internal quotation marks omitted).

In reaching its holding, *York* relied on federal decisions interpreting a D.C. Code provision even more similar to Section 29-105.02. *York*, 296 A.2d at 713-14 (discussing, *e.g.*, *Hill-Lanham, Inc. v. Lightview Dev. Corp.*, 163 F. Supp. 475, 476 (D.D.C. 1957) (interpreting provision stating that corporation that transacted

business in the District without certificate of authority could not "maintain an action" in the District until corporation obtained certificate of authority)). As we explained in *York*, "[t]he vast majority of courts interpret statutes which preclude maintaining an action until there is compliance with certain state requirements as meaning that compliance after an action has commenced is sufficient to enable the corporation to proceed with its suit." 296 A.2d at 714 (internal quotation marks omitted). In other words, "non-compliance [with such provisions] is a mere temporary disability and, therefore, capable of obviation at any stage of the proceedings." *Hill-Lanham*, 163 F. Supp. at 476.

Essentially for the reasons stated in *York* and *Hill-Lanham*, we hold that the registration requirement under Section 29-105.02 does not go to the Superior Court's subject-matter jurisdiction.

### C. Forfeiture

The trial court concluded that "an entity's unregistered status is a non-waivable [defense] that may be raised at any time." We disagree.

In general, defenses are forfeited if not timely raised before judgment. *See, e.g.*, *Mitchell v. Gales*, 61 A.3d 678, 683-87 (D.C. 2013) ("The affirmative defense of res judicata is subject, like other affirmative defenses, to waiver if not raised in

the answer or timely asserted thereafter.") (brackets, ellipsis, and internal quotation marks omitted). We note that, although our cases sometimes refer to untimely raised arguments or defenses as having been waived, our more recent practice is to refer to such arguments or defenses as having been forfeited. *See, e.g.*, *Massey v. Massey*, 210 A.3d 148, 151 n.4 (D.C. 2019) (Failure to raise a defense in a timely manner is "better characterized as . . . forfeiture."; "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.") (internal quotation marks omitted).

The general requirement that defenses be timely raised before judgment reflects the strong interest in the finality of judgments. *See, e.g.*, *Mitchell*, 61 A.3d at 684 ("A fundamental principle of litigation that has been stressed in a variety of contexts is the importance of finality.") (internal quotation marks omitted); *see also, e.g.*, *Clement v. D.C. Dep't of Hum. Servs.*, 629 A.2d 1215, 1219 (D.C. 1993) ("[T]he purpose of [Super. Ct. Civ. R.] 60(b) is to respect the finality of judgments by providing post-judgment relief only under exceptional circumstances, in unusual and extraordinary situations justifying an exception to the overriding policy of finality, or where the judgment may work an extreme and undue hardship.") (citations omitted).

We see no adequate reason to give special treatment to the affirmative defense of a business entity's lack of registration under Section 29-105.02. Although this court has not previously addressed whether lack of registration under Section 29-105.02 can be forfeited if not timely raised, we have treated a very similar defense as "waived" because not timely raised. *See Tenants of Minn. Gardens, Inc. v. D.C. Rental Hous. Comm'n*, 570 A.2d 1194, 1196 (D.C. 1990) (tenants "waived" defense that landlord lacked certificate of authority to do business in D.C., by failing to raise defense before administrative agency; "In cases where a party brings an action which it has no legal authority to file, . . . a court will not void the proceeding after the fact. In such cases, the opposing party must ordinarily bring the defect to the attention of the court at the time the action is filed."). For the same reason, we hold that lack of registration under Section 29-105.02 can be forfeited if not raised in a timely manner.

In concluding to the contrary that lack of registration under Section 29-105.02 can be raised at any time, the trial court relied on *HVAC Specialist, Inc. v. Dominion Mechanical Contractors, Inc.*, 201 A.3d 1205 (D.C. 2019). We view *HVAC* as significantly different from the present case.

*HVAC* held that a defense based on a subcontractor's lack of a required license to perform air-conditioning and refrigeration work was not "waivable." 201 A.3d at 1209-12. *HVAC* acknowledged that such defenses usually must be raised in a timely

manner. *Id.* at 1211. *HVAC* held, however, that the particular licensing requirement at issue fell within a "public policy exception" because the licensing requirement was intended to "protect public health, safety or welfare, or to assure the public that persons engaged in such occupations or professions have the specialized skills or training required to perform the services offered." *Id.* at 1210 (quoting D.C. Code § 47-2853.04(a)).

The registration requirement in Section 29-105.02 is very different from the licensing requirement at issue in *HVAC*. Section 29-105.02 generally requires entities conducting business in the District to register in order to "bring such corporations under the supervision and the regulation of public officials . . . to the end that the public may have the same information respecting their background and financial standing . . . which is demanded of domestic corporations, and as a consequence, also to render them amenable to ordinary legal process." *Hill-Lanham*, 163 F. Supp. at 476. Section 29-105.02's registration requirement, therefore, appears to encourage transparency and facilitate legal redress, not to directly protect public health and safety.

The contrast between general business-registration requirements such as Section 29-105.02 and public-safety licensing requirements is illustrated by the difference in how strictly those requirements are enforced. As we have noted,

general business-registration requirements can often be satisfied retroactively, so that a lawsuit filed by an unregistered business can proceed or be reinstated if the business subsequently registers. *York*, 296 A.2d at 714. In contrast, public-safety licensing requirements are strictly enforced, even where such enforcement "may appear to be harsh and disproportionate." *HVAC*, 201 A.3d at 1210. Thus, for example, contracts entered into by a contractor who lacks such a license are treated as void and unenforceable, and such contractors can neither recover in contract or be compensated for the value of the work that was done, even if the other party was aware of the contractor's lack of a license. *Id.* Moreover, the subsequent obtaining of a proper license does not legitimize work done during the period when the contractor lacked the required license. *See, e.g.*, *Holiday Homes, Inc. v. Briley*, 122 A.2d 229, 230-32 (D.C. 1956) (architect was not entitled to recover for work done during period during which required license had lapsed).

For the foregoing reasons, we conclude that *HVAC* does not govern this case and that instead Ms. Hinojosa forfeited the defense of Kids Holdings's lack of registration by failing to raise that defense before judgment in this case.

## D. Relief from Judgment Under Super. Ct. Civ. R. 60(b)(6)

The trial court granted full relief from judgment under Super. Ct. Civ. R. 60(b)(6). We review that ruling to determine whether the trial court acted within

the scope of its discretion. *E.g.*, *Puckrein v. Jenkins*, 884 A.2d 46, 60 (D.C. 2005). A court acts outside the scope of discretion when "it makes an error of law." *Wendemu v. Tesema*, 304 A.3d 953, 960 (D.C. 2023) (internal quotation marks omitted).

The trial court vacated the judgment based entirely on the legal conclusion that Kids Holdings's lack of registration was an unwaivable defense that warranted relief from the judgment even though Ms. Hinojosa did not raise that defense before judgment. For the reasons we have explained, we disagree with that legal conclusion. Ordinarily, we would remand the case for the trial court to exercise its discretion based on correct legal principles. *See, e.g.*, *Long v. United States*, 83 A.3d 369, 383 (D.C. 2013) ("Where a judge, in exercising . . . discretion, has misapprehended the applicable legal principles, we often remand the case for reconsideration under the correct standards.") (ellipsis and internal quotation marks omitted). Such a remand is not necessary, however, "if we can discern from the record only one permissible option." *K.H., Sr. v. R.H.*, 935 A.2d 328, 335 (D.C. 2007). We reach that conclusion in the present case, because we see no permissible basis for the trial court to vacate the judgment based solely on Kids Holdings's lack of registration. We note that Kids Holdings disputes that it was doing business in the District so as to be subject to the registration requirement, but we have no need to address that argument.

Ms. Hinojosa did not challenge Kids Holdings's lack of registration until over three years after final judgment. Ms. Hinojosa has not presented a reason for the three-year delay in raising the issue, instead arguing only that Rule 60(b)(6) is "not subject to time limits." To the contrary, however, relief under Rule 60(b)(6) must be sought "within a reasonable time" after the date of final judgment. Super. Ct. Civ. R. 60(c)(1); *see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993) ("To justify relief under subsection (6), a party must show extraordinary circumstances suggesting that the party is faultless in the delay.") (internal quotation marks omitted); *Carrasco v. Thomas D. Walsh, Inc.*, 988 A.2d 471, 476 (D.C. 2010) ("[T]he passage of a year may render a [Rule 60(b)(6)] motion untimely absent compelling reasons for the delay.") (internal quotation marks omitted).

"Rule 60(b)(6) is properly invoked in extraordinary circumstances or where a judgment may work an extreme and undue hardship . . . ." *Hudson v. Shapiro*, 917 A.2d 77, 85 (D.C. 2007) (internal quotation marks omitted). For the foregoing reasons, we conclude as a matter of law that Kids Holdings's failure to register does not provide a permissible basis upon which to grant relief from judgment under Rule 60(b)(6) in this case.

## E. Voidness Under Rule 60(b)(4)

Ms. Hinojosa argues that the judgment should also be vacated under Super. Ct. Civ. R. 60(b)(4) (void judgments may be set aside). Ms. Hinojosa rests this argument on the theory that the judgment was void because Kids Holdings's failure to register deprived the Superior Court of subject-matter jurisdiction. For reasons we have already explained, however, we hold that Kids Holdings's failure to register did not deprive the Superior Court of jurisdiction. We therefore hold as a matter of law that Rule 60(b)(4) provides no basis upon which to grant relief from judgment.

## F. Fraud

Ms. Hinojosa also argues that the judgment should be set aside under Super. Ct. Civ. R. 60(d)(2), which recognizes the trial court's authority to "set aside a judgment for fraud on the court." Specifically, Ms. Hinojosa argues that Kids Holdings committed a fraud upon the court by falsely claiming, in connection with the effort to enforce the judgment, that the property at issue was not Ms. Hinojosa's home, when in fact Kids Holdings knew that the property was Ms. Hinojosa's home and was therefore exempt from attachment. We do not address that issue, however, nor do we address the factual question whether Kids Holdings in fact committed fraud on the trial court. Because the trial court granted relief to Ms. Hinojosa on other grounds, the trial court did not address Ms. Hinojosa's argument that Kids

Holdings had committed fraud upon the court. We leave that issue to be addressed by the trial court in the first instance on remand.

### G. Motion to Quash

As previously noted, the trial court granted the motion to quash for the sole reason that Kids Holdings's failure to register was an unwaivable defense that entitled Ms. Hinojosa to relief from the judgment. The trial court therefore did not address other arguments raised by the parties with respect to the motion to quash. In light of our holding that Kids Holdings's failure to register was not an unwaivable defense entitling Ms. Hinojosa to relief from the judgment, we vacate the trial court's order granting the motion to quash the writ and remand for further proceedings with respect to that motion.

For the foregoing reasons, the judgment of the Superior Court granting relief from judgment and quashing the writ is vacated, and the case is remanded for further proceedings.

*So ordered.*